No. 24-3094

IN THE
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

---

Minnesota Voter's Alliance, et al.,

Appellants,

vs.

Keith M. Ellison, in his official capacity as Attorney General and Brad Johnson, in his official capacity as Anoka County Attorney,

Appellees.

---

**ON APPEAL FROM U.S. DISTRICT COURT FOR THE DISTRICT OF MINNESOTA
23-CV-2774 (NEB/TNL)**

---

**BRIEF OF APPELLEE KEITH ELLISON**

---

UPPER MIDWEST LAW CENTER

JAMES DICKEY
DOUGLAS SEATON
ALEXANDRA K. HOWELL

12600 Whitewater Drive, Suite 140
Minnetonka, Minnesota 55343
(612) 428-7000

*and*

KEITH ELLISON
Attorney General
State of Minnesota

ALLEN COOK BARR
NATHAN J. HARTSHORN
Assistant Attorneys General

445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2134
(651) 757-1487

*Attorneys for Appellee Keith Ellison*

LIBERTY JUSTICE CENTER

REILLY STEPHENS*
7500 Rialto Blvd., Ste. 1-250
Austin, Texas 78735
(512) 481-4400

*Pro Hac Vice in District Court

*Attorneys for Appellants*

BRAD JOHNSON
Anoka County Attorney

JASON J. STOVER
Assistant County Attorney

720 Government Center
2100 Third Avenue
Anoka, MN 55303
(763) 324-5550

*Attorneys for Appellee Brad Johnson*

## SUMMARY OF CASE AND REQUEST FOR ORAL ARGUMENT

States have a compelling interest in protecting voters from confusion about voting procedures and undue influences on their voting behavior. *Burson v. Freeman*, 504 U.S. 191, 199 (1992). To protect these interests, Minnesota prohibits interfering with voting rights by threatening voters, lying to them about voting procedures, or otherwise intentionally interfering with voting rights. Minn. Stat. § 211B.075, subds. 1–3.

Appellants Minnesota Voters Alliance and several of its individual members (collectively "MVA") challenge that statute. They alleged that they believe that "felons still serving their sentences do not have a right to vote in Minnesota" and that they wish to publicly make that statement. The district court rejected their claims on the basis that because MVA believes its speech is true, it definitionally does not violate the statute's narrow prohibition on knowingly false speech. It also held that even if the statute reaches MVA's speech, the speech is not protected by the First Amendment, and even if it were, Minnesota's law satisfies strict scrutiny because it is narrowly tailored to serve the state's compelling interest in preventing voter confusion. The court further rejected MVA's claims that the statute is a prior restraint or void for vagueness.

The Attorney General agrees with MVA that oral argument would assist the Court, and that fifteen minutes is appropriate.

# TABLE OF CONTENTS

**Page**

SUMMARY OF CASE AND REQUEST FOR ORAL ARGUMENT ..................... i

TABLE OF AUTHORITIES ...................................................................... iv

STATEMENT OF ISSUES ......................................................................... 1

STATEMENT OF THE CASE .................................................................... 3

SUMMARY OF ARGUMENT ................................................................... 6

ARGUMENT ............................................................................................ 6

I.   THE DISTRICT COURT CORRECTLY DECLINED TO REACH MVA'S FACIAL
     FIRST AMENDMENT CLAIMS. ............................................................ 7

II.  THE ELECTION-INTEGRITY STATUTE DOES NOT VIOLATE MVA'S FIRST
     AMENDMENT RIGHTS. ..................................................................... 10

     A.   MVA's Speech Is Unprotected by the First Amendment. ................. 12

     B.   The Prohibition on MVA's False Statements Regarding
          Election Procedures Satisfies Strict Scrutiny. ............................... 15

III. THE ELECTION-INTEGRITY STATUTE IS NOT A PRIOR RESTRAINT. ................. 18

IV.  THE ELECTION-INTEGRITY STATUTE IS NOT UNCONSTITUTIONALLY
     VAGUE. ........................................................................................ 23

     A.   The Election-Integrity Statute Reaches Only Unprotected
          Conduct and Is Not Unconstitutionally Vague in All
          Applications. ........................................................................... 23

     B.   Even If the Election-Integrity Statute Reaches Some Protected
          Conduct, It Is Sufficiently Definite to Be Constitutional. .................. 24

          1.   The Election-Integrity Statute's Intent Elements Ensure
               Notice of What Conduct Is Prohibited. ................................ 25

2.     The Election-Integrity Statute Uses Ordinary Language That Provides Notice of What the Statute Prohibits.................26

3.     There is No Risk of Discriminatory Enforcement Because the Election-Integrity Statute's Ordinary Language Provides a Standard of Enforcement. .......................................31

V.    I<span style="font-variant:small-caps">F THE</span> C<span style="font-variant:small-caps">OURT</span> R<span style="font-variant:small-caps">EACHES</span> MVA's R<span style="font-variant:small-caps">EMAINING</span> A<span style="font-variant:small-caps">RGUMENTS</span>, T<span style="font-variant:small-caps">HEY</span> A<span style="font-variant:small-caps">RE</span> M<span style="font-variant:small-caps">ERITLESS</span>. .......................................................................................32

A.    The Voter-Intimidation Provision Is Facially Constitutional. ............33

B.    The Election-Disinformation Provision is Facially Constitutional. .......................................................................................36

C.    The Interference Provision Is Facially Constitutional. ......................37

D.    The Vicarious-Liability Provision Is Facially Constitutional.............38

CONCLUSION .......................................................................................41

# TABLE OF AUTHORITIES

**Page**

F<small>EDERAL</small> C<small>ASES</small>

*281 Care Committee v. Arneson,*
  766 F.3d 774 (8th Cir. 2014).......................................................... 16, 17

*Alexander v. United States,*
  509 U.S. 544 (1993) ..................................................................... 1, 18

*Animal Legal Def. Fund v. Reynolds,*
  8 F.4th 781 (8th Cir. 2021) ............................................................... 13

*Assoc. of Cmty. Orgs. For Reform Now v. St. Louis Cnty.,*
  930 F.2d 591 (8th Cir. 1991)............................................................. 35

*Backpage.com, LLC v. Dart,*
  807 F.3d 229 (7th Cir. 2015)............................................................. 19

*Bucklew v. Precythe,*
  587 U.S. 119 (2019) .......................................................................... 9

*Buckley v. Am. Const. L. Found., Inc.,*
  525 U.S. 182 (1999) ......................................................................... 13

*Burson v. Freeman,*
  504 U.S. 191 (1992) ....................................................... 1, 15, 34, 38

*Calzone v. Summers,*
  942 F.3d 415 (8th Cir. 2019).............................................................. 27

*Citizens United v. Federal Election Commission,*
  558 U.S. 310 (2010) .......................................................................... 10

*City of Lakewood v. Plain Dealer Publ'g Co.,*
  486 U.S. 750 (1988) .......................................................................... 20

*City of Littleton v. Z.J. Gifts D-4, L.L.C.,*
  541 U.S. 774 (2004) ................................................................. 1, 21, 22

iv

*Coates v. Cincinnati*,
402 U.S. 611 (1971) ......................................................... 26

*Counterman v. Colorado*,
600 U.S. 66 (2023) ................................................ 29, 33, 34

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012) ....................................... 29

*Doe v. Pulaski Cty. Special Sch. Dist.*,
306 F.3d 616 (8th Cir. 2004) ......................................... 33

*Fams. Achieving Indep. & Respect v. Neb. Dep't of Soc. Servs.*,
111 F.2d 1408 (8th Cir. 1997) ................................ 24-25, 30

*Garrison v. Louisiana*,
379 U.S. 64 (1964) .......................................................... 14

*GLBT Youth in Iowa Schs. Task Force v. Reynolds*,
114 F.4th 660 (8th Cir. 2024) ................................. 6, 32, 33

*Grayned v. City of Rockford*,
408 U.S. 104 (1972) ........................................................ 24

*Harper v. Va. Bd. of Elections*,
383 U.S. 663 (1966) ........................................................ 12

*Hill v. Colorado*,
530 U.S. 703 (2000) ........................................................ 27

*Holder v. Humanitarian L. Project*,
561 U.S. 1 (2010) ............................................................ 37

*Hurley v. Irish- Am. Gay, Lesbian, & Bisexual Grp. of Bos.*,
515 U.S. 557 (1995) ........................................................ 37

*Independence-All. Party of Minn. v. Simon*,
87 F.4th 872 (8th Cir. 2023) ........................................... 6

*Josephine Havlak Photographer, Inc. v. Village of Twin Oaks*,
 864 F.3d 905 (8th Cir. 2017)............................................................. 1, 8

*Kennedy v. Bremerton Sch. Dist.*,
 597 U.S. 507 (2022) ...................................................................... 34

*League of Women Voters of N.H. v. Kramer*,
 No. 1:24-cv-00073 (D.N.H. Sept. 19, 2024) (unpublished) ................................ 16

*L.H. v. Independence School District*,
 111 F.4th 886 (8th Cir. 2024) ........................................................... 1, 10

*McConnell v. Fed. Election Comm'n*,
 540 U.S. 93 (2003)........................................................................ 13

*Members of the City Council of Los Angeles v. Taxpayers for Vincent*,
 466 U.S. 789 (1984) ....................................................................... 8

*Milligan v. City of Red Oak*,
 230 F.3d 355 (8th Cir. 2000)............................................................. 31

*Minnesota Voters Alliance v. Mansky*,
 585 U.S. 1 (2018) .............................................................. 1, 12, 14, 36

*Moody v. NetChoice, LLC*,
 603 U.S. 707 (2024).......................................................... 1, 7, 9, 32,

*Multimedia Holdings Corp. v. Cir. Ct. of Fla.*,
 544 U.S. 1301 (2005) ..................................................................... 18

*Nat'l Coal. on Black Civ. Participation v. Wohl*,
 498 F. Supp. 3d 457 (S.D.N.Y. 2020)..................................................... 15

*Nat'l Endowment for the Arts v. Finley*,
 524 U.S. 569 (1998) ....................................................................... 7

*Ramirez v. Collier*,
 595 U.S. 411 (2022) ...................................................................... 34

*Riehm v. Engelking,*
    538 F.3d 952 (8th Cir. 2008) ............................................................... 33

*Roth v. United States,*
    354 U.S. 476 (1957) ........................................................................... 26

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.,*
    547 U.S. 47 (2006) ......................................................................... 37, 38

*Scales v. United States,*
    367 U.S. 203 (1961) ....................................................................... 39, 40

*Screws v. United States,*
    325 U.S. 91 (1945) .................................................................... 2, 25, 26

*St. Croix Waterway Ass'n v. Meyer,*
    178 F.3d 515 (8th Cir. 1999) .......................................................... 27, 31

*Thorburn v. Austin,*
    231 F.3d 1114 (8th Cir. 2000) .............................................................. 31

*TikTok, Inc. v. Garland,*
    No. 24-656, 2025 WL 22257 (Jan. 17, 2025) ...................................... 33

*Turner Broad. Sys., Inc. v. Fed. Commc'n Comm.,*
    520 U.S. 180 (1997) ........................................................................... 35

*United States v. Alvarez,*
    567 U.S. 709 (2012) ................................................................. 12, 17, 36

*United States v. Buttorff,*
    572 F.2d 619 (8th Cir. 1978) ............................................................... 39

*United States v. Eklund,*
    733 F.2d 1287 (8th Cir. 1984) ............................................................. 25

*United States v. Hansen,*
    599 U.S. 762 (2023) ....................................................................... 39, 40

*United States v. Kaylor*,
  877 F.2d 658 (8th Cir. 1989)............................................................. 31

*United States v. Lee*,
  935 F.2d 952 (8th Cir. 1991)............................................................. 24

*United States v. Lehman*,
  8 F.4th 754 (8th Cir. 2021) ........................................................... 8, 29

*United States v. Stevens*,
  559 U.S. 460 (2010) ........................................................................ 32

*United States v. Williams*,
  553 U.S. 285 (2008)................................................................ 2, 23, 26

*United States v. Williams*,
  690 F.3d 1056 (8th Cir. 2012).......................................................... 12

*Viewpoint Neutrality Now! v. Bd. of Regents of the Univ. of Minn.*,
  109 F.4th 1033 (8th Cir. 2024) ........................................................ 18

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
  455 U.S. 489 (1982)..................................................................... 8, 23

*Wash. State Grange v. Wash. State. Republican Party*,
  552 U.S. 442 (2008)......................................................................... 19

*Whitney v. California*,
  274 U.S. 357 (1927)......................................................................... 17

*Woodis v. Westark Cmty. Coll.*,
  160 F.3d 435 (8th Cir. 1998)............................................................ 24

**STATE CASES**

*Buckner v. Robichaud*,
  992 N.W.2d 686 (Minn. 2023)......................................................... 17

*McGuire v. Bowlin*,
  932 N.W.2d 819 (Minn. 2019)......................................................... 29

*Seagate Tech., LLC v. W. Digit. Corp.*,
   854 N.W.2d 750 (Minn. 2014)................................................................ 17

*St. Jude Med., Inc. v. Carter*,
   913 N.W.2d 678 (Minn. 2018).............................................................. 22

**STATE STATUTES**

Minn. Stat. § 211B.075 ................................................................. Passim

**FEDERAL RULES**

Fed. R. Civ. P. 8 .................................................................................. 9

**STATE RULES**

Minn. R. Civ. App. P. 126.02 ........................................................... 22

Minn. R. Civ. App. P. 103.03 ........................................................... 22

Minn. R. Civ. P. 11.03 ...................................................................... 17

Minn. R. Civ. P. 65.01 ...................................................................... 22

Minn. R. Civ. P. 65.02 ...................................................................... 22

Minn. R. Gen. Prac. 1.02 .................................................................. 22

**OTHER AUTHORITIES**

2023 Minn. Laws ch. 34. § 2 .............................................................. 3

*Hearing Before H. Pub. Safety, Fin., & Pol'y Comm.*,
   2023 Leg., 93d Sess., (Minn. Feb 21, 2023)................................. 3, 15

*Hearing Before H. Judiciary, Fin. & Civ. L. Comm.*,
   2023 Leg., 93d Sess. (Minn. Mar. 2, 2023) ................................. 3, 34

*Hearing Before S. Elections Comm.,*
    2023 Leg. 93d Sess. (Minn. Feb. 2, 2023)............................................................3

*Hearing Before S. Judiciary & Pub. Safety Comm.,*
    2023 Leg. 93d Sess. (Minn. Mar. 10, 2023) .........................................................3

*Black's Law Dictionary* (9th ed. 2009)...................................................... 12-13, 27

*Oxford American Dictionary of Current English* (1999) ..................................27, 28

# STATEMENT OF ISSUES

I.   Did MVA properly plead its remaining facial First Amendment claims when it failed to allege any way that Minn. Stat. § 211B.075 applied differently to others as compared to itself?

*The district court construed the complaint to allege only as-applied challenges because MVA pleaded no way that third parties would be affected differently than itself.*

Most apposite authorities:
> *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024)
> *Josephine Havlak Photographer, Inc. v. Village of Twin Oaks*, 864 F.3d 905 (8th Cir. 2017)

II.  As applied to MVA's proposed speech, does Minn. Stat. § 211B.075 violate the First Amendment?

*The district court held that Minn. Stat. § 211B.075 did not violate MVA's First Amendment rights because the statute does not prohibit MVA's proposed speech; if the speech was prohibited, it was not protected by the First Amendment; and if it was protected, that application satisfies strict scrutiny.*

Most apposite authorities:
> Minn. Stat. § 211B.075
> *Minnesota Voters Alliance v. Mansky*, 585 U.S. 1 (2018)
> *Burson v. Freeman*, 504 U.S. 191 (1992)
> *L.H. v. Independence School District*, 111 F.4th 886 (8th Cir. 2024)

III. Did Appellants meet their burden to show that Minn. Stat. § 211B.075 is a facially unconstitutional prior restraint on speech?

*The district court held that, because a prior restraint on speech under Minn. Stat. § 211B.075 could occur only after judicial proceedings that could be tailored to meet constitutionally mandated safeguards, the statute is not a facially unconstitutional prior restraint on speech.*

Most apposite authorities:
> *Alexander v. United States*, 509 U.S. 544 (1993)
> *City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004)

IV.   Did Appellants meet their burden to show that Minn. Stat. § 211B.075 is facially unconstitutionally vague?

*The district court held that the statute was not facially vague because its meaning is plain.*

Most apposite authorities:
   *United States v. Williams*, 553 U.S. 285 (2008)
   *Screws v. United States*, 325 U.S. 91 (1945)

## STATEMENT OF THE CASE

To protect its interests in preventing voter confusion and undue influences on voter behavior, Minnesota enacted section 211B.075, which prohibits threatening voters, giving voters knowingly false information, or otherwise engaging in conduct intended to interfere with voting rights. 2023 Minn. Laws ch. 34, § 2. During legislative hearings, multiple committees heard testimony that voters were being threatened in attempts to alter whether or how they voted. The legislature further heard reports of groups giving potential voters false information, such as lying about where polling locations were, when people could vote, or who was eligible to vote. *E.g.*, *Hearing Before H. Pub. Safety, Fin., & Pol'y Comm.*, 2023 Leg., 93d Sess., at 1:10:50–:11:15 (Minn. Feb. 21, 2023) (statement of Rep. Walter Hudson);[1] *Hearing Before H. Judiciary, Fin., & Civ. L. Comm.*, 2023 Leg., 93d Sess., at 42:00–43:45 (Minn. Mar. 2, 2023) (statement of Rep. Emma Greenman);[2] *Hearing Before S. Elections Comm.*, 2023 Leg., 93d Sess., at 48:35–:55 (Minn. Feb. 2, 2023) (statement of Khadar Muhumed, member of Muslim Coalition of ISAIAH);[3] *Hearing Before S. Judiciary & Pub. Safety Comm.*, 2023 Leg. 93d Sess., at 23:45–24:00 (Minn. Mar. 10, 2023) (statement of Sen. Liz Boldon).[4]

---

[1] Available at https://www.house.mn.gov/hjvid/93/896392.

[2] Available at https://www.house.mn.gov/hjvid/93/896457.

[3] Available at https://www.lrl.mn.gov/media/file?mtgid=1047186.

[4] Available at https://www.lrl.mn.gov/media/file?mtgid=1047668.

The election-integrity statute has five provisions. Minn. Stat. § 211B.075 (2024). Three provide substantive prohibitions, one establishes vicarious liability, and one establishes enforcement procedures:

- The voter-intimidation provision prohibits people from harming or threatening to harm someone with the intent to impact the exercise of voting rights. *Id.*, subd. 1.

- The election-disinformation provision prohibits people from transmitting statements that the person knows to be false with the intent of preventing a person from exercising voting rights. *Id.*, subd. 2.

- The interference provision prohibits intentionally hindering, interfering with, or preventing someone from exercising voting rights. *Id.*, subd. 3.

- The vicarious-liability provision makes a person vicariously liable for violations if the person intentionally aids, advises, hires, counsels, abets, incites, compels, or coerces another (or attempts to do so) to violate the substantive provisions of the statute, or if the person conspires, combines, agrees, or arranges with another to do so. *Id.*, subd. 4.

- The enforcement provision allows the Attorney General, county attorneys, or any person injured by a violation to seek damages and injunctive relief. *Id.*, subd. 5.

Appellants Minnesota Voters Alliance, Mary Amlaw, Ken Wendling, and Tim Kirk are a self-described "election integrity" organization and several of its individual members. (Add. 7–8.) In 2023 they sued Appellees Minnesota Attorney General Keith Ellison and Anoka County Attorney Brad Johnson, alleging that the election-integrity statute is unconstitutional. (App. 24–31; R. Doc. 13, at 24–31.)

The district court granted the Attorney General's motion to dismiss and the County Attorney's motion for judgment on the pleadings, while denying MVA's motion for a preliminary injunction. (Add. 14.) Although MVA's First Amendment claims were styled as facial claims, the court concluded that the facts it pleaded reflected only an as-applied challenge. (*Id.* at 5–7.) The court held that MVA's First Amendment claims failed because the election-integrity statute requires knowledge of a statement's falsity and intent to impede the exercise of voting rights. (*Id.* at 7– 8.) Because MVA admitted that it lacked this intent, the court held that the statute did not proscribe the speech they wished to make. (*Id.*) The district court also held that even if the statute proscribed MVA's desired speech, that proscription was constitutional. (*Id.* at 8–11.) Finally, the district court held that, while properly before the court, MVA's facial prior-restraint and vagueness challenges failed on the merits. (*Id.* at 11–14.) MVA appeals the dismissal of all claims.

## SUMMARY OF ARGUMENT

The Court should affirm dismissal. The election-integrity statute does not chill MVA's speech because that speech is not prohibited by the statute. And even if the statute does prohibit the speech, the First Amendment does not protect MVA's speech or, if it does, the statute is justified by Minnesota's compelling interest in protecting voter rights. MVA's facial prior-restraint and facial vagueness claims fail because the election-integrity statute does not prohibit speech before its occurrence so as to constitute a prior restraint, nor does it fail to provide adequate notice of the conduct it prohibits. Finally, MVA's remaining claims were as-applied claims cloaked as facial claims that were therefore not properly before the court. And even if MVA properly presented those claims, they are meritless.

## ARGUMENT

This Court reviews dismissal for failure to state a claim de novo. *Indep.-All. Party of Minn. v. Simon*, 87 F.4th 872, 875 (8th Cir. 2023). The Court reviews the denial of a preliminary injunction for an abuse of discretion. *GLBT Youth in Iowa Schs. Task Force v. Reynolds*, 114 F.4th 660, 669 (8th Cir. 2024).[5]

---

[5] Because the district court dismissed the complaint, it denied MVA's motion for a temporary injunction without considering the other *Dataphase* factors. (Add. 14 n.9.) The Attorney General therefore agrees with MVA that if the Court reverses on the merits, remand to reconsider the preliminary injunction is appropriate.

Here, MVA appeals both facial and as-applied challenges to the election-integrity statute. The choice to bring facial challenges "comes at a cost." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). Even in the First Amendment context, facial challenges are disfavored. *Id.* at 744. This is so because they rest on speculation about the law's coverage and its future enforcement. *Id.* at 723. They also threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a constitutional manner. *Id.* at 723–24. Accordingly, parties making such a challenge confront a "heavy burden" in advancing their claims. *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998).

## I. THE DISTRICT COURT CORRECTLY DECLINED TO REACH MVA'S FACIAL FIRST AMENDMENT CLAIMS.

MVA purported to bring facial First Amendment, prior-restraint, and vagueness challenges. Aside from MVA's prior-restraint and vagueness challenges (which are discussed in sections III and IV), the district court dismissed MVA's facial claims, reasoning that MVA had not pleaded the facts necessary to maintain a facial challenge. (Add. 5–7.) MVA argues this was error on the theory that the facial/as-applied distinction is only relevant to the breadth of the remedy sought. (Appellants' Br. 29.) But although MVA ostensibly alleged facial First Amendment claims, all the facts it alleged concerned the election-integrity statute as-applied to

specific statements it wished to make. The district court therefore properly narrowed MVA's claims to as-applied challenges.

A facial challenge to a statute seeks to have a law invalidated in toto, while an as-applied challenge seeks to have a statute declared unconstitutional as-applied to the facts of a particular case. *Vill. of Hoffman Ests.*, 455 U.S. at 494 n.5; *United States v. Lehman*, 8 F.4th 754, 757 (8th Cir. 2021). Because such challenges are disfavored, courts should not entertain a facial overbreadth challenge when the challenger fails to adduce evidence that third parties will be affected in any manner differently from the challenger. *Josephine Havlak Photographer, Inc. v. Vill. of Twin Oaks*, 864 F.3d 905, 912 (8th Cir. 2017); *see also Members of the City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 802 (1984).

Here, MVA failed to allege in its pleadings any way in which the election-integrity statute would affect third parties differently than itself. As the district court correctly recognized, MVA "essentially present[ed] an as-applied challenge cloaked as a facial challenge," because its complaint focused entirely on how the election-integrity statute supposedly violated MVA's First Amendment rights, not the rights of others. (Add. 6.) Accordingly, the district court appropriately limited its consideration to the election-integrity statute as-applied to the speech identified in MVA's complaint.

MVA argues that the court should still have also considered unknown speech, by hypothetical parties, adrift from any context in which the speech was made. (Appellants' Br. 28–32.) But these facts crucially matter, particularly in the context of a statute that contains explicit knowledge and intent requirements. *See Moody*, 603 U.S. at 724–25.

MVA also argues that the facial/as-applied distinction is only relevant to the remedy that the court will employ, not what it had to plead. (Appellants' Br. 29.) But rule 8 is clear: a complaint must contain "a short and plain statement of the claim *showing that the pleader is entitled to relief*." Fed. R. Civ. P. 8(a)(2) (emphasis added). Thus, if MVA wished for the district court to consider granting facial relief, MVA had to establish entitlement to that relief.

The cases cited by MVA are not to the contrary. *Bucklew v. Precythe* was a death-penalty case where the plaintiff argued that he was not required to identify an alternative means of execution in an as-applied challenge (although one is required in facial challenges). 587 U.S. 119, 135 (2019). The Court rejected this argument because having different pleading requirements for facial versus as-applied claims in this context would require the Constitution to have two meanings depending on the breadth of the remedy sought. *Id.* at 138. Here, in contrast, the issue is whether MVA properly pleaded its facial challenges, not how the First Amendment would apply if they had been properly pled.

The same is true of *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010). There, disregarding the facial issues would have required the Court to endorse a ruling that "lack[ed] . . . a valid basis." *Id.* at 329; *see also id.* at 331 ("[W]e cannot easily address that [as-applied] issue without assuming a premise—the permissibility of restricting corporate political speech—that is itself in doubt."). Here, however, the district court's decision not to reach MVA's facial challenge does not result in the assumption of any broader, dubious premise. Instead, it was based on MVA's failure to plead facts that would require the court to reach overbreadth at all.

Because MVA did not plead how the election-integrity statute would affect third parties differently than itself, its complaint did not show how it was entitled to facial relief. The Court should therefore affirm the dismissal of MVA's facial First Amendment challenges.

## II. THE ELECTION-INTEGRITY STATUTE DOES NOT VIOLATE MVA'S FIRST AMENDMENT RIGHTS.

The district court did consider MVA's as-applied First Amendment claims. As an initial matter, the district court correctly held that MVA failed to state a claim because its intended speech is not proscribed by the election-integrity statute. (Add. 7–8.) To establish a First Amendment injury, a plaintiff must either identify protected speech that it would like to engage in—but the law prohibits—or identify intended future conduct that the law "arguably proscribe[s]." *L.H. v. Indep. Sch.*

*Dist.*, 111 F.4th 886, 893 (8th Cir. 2024). Here, the election-integrity statute proscribes "force, coercion, violence, restraint, damage, harm, or loss" with the intent of affecting voting behavior, knowingly false statements intended to impede voting rights, and intentionally hindering voting. Minn. Stat. § 211B.075. In other words, violating the law requires someone to intend to impact the exercise of voting rights.

MVA alleged that it believes its speech is true and that it does not intend to have that impact. (App. 6, 9–10, 18–19; R. Doc. 13, at 6, 9–10, 18–19.) Those allegations are fatal to its First Amendment claims. Accepting MVA's allegations as true—which the court must when considering a motion to dismiss—MVA has no argument that the statute proscribes its intended future conduct. MVA never confronts this problem with its claims. The closest it comes is by falsely stating that the election-integrity statute prohibits "simply causing information to be transmitted." (Appellants' Br. 27.) This ignores the statute's intent and knowledge requirements. Under the statute's plain terms, the knowledge and intent pleaded by MVA conclusively takes its speech outside the statute.

Moreover, even if the statute prohibited MVA's speech, that prohibition would not violate the First Amendment. (Add. 8–11.) In response, MVA contends that the election-integrity statute's application to MVA's speech is subject to strict

scrutiny and that it fails that scrutiny. (Appellants' Br. 21–28, 32–36, 50–55.) Both contentions fail.

### A.    MVA's Speech Is Unprotected by the First Amendment.

Voting is a fundamental right. *Harper v. Va. Bd. of Elections*, 383 U.S. 663, 667 (1966). Accordingly, states can "prohibit messages intended to mislead voters about voting requirements and procedures" without violating the First Amendment. *Minn. Voters All. v. Mansky*, 585 U.S. 1, 18 n.4 (2018). The election-disinformation provision is such a prohibition. The statute prohibits people from intentionally interfering with voting rights by knowingly giving voters false information about how to vote, whether they can vote, or risks associated with voting. Minn. Stat. § 211B.075, subd. 2. The district court correctly held that the First Amendment allows these voter protections.

Even before *Mansky's* explicit authorization, the Supreme Court recognized that where false claims are made "to effect a fraud . . . it is well established that the Government may restrict speech without affronting the First Amendment." *United States v. Alvarez*, 567 U.S. 709, 723 (2012) (plurality opinion); *see also United States v. Williams*, 690 F.3d 1056, 1061 (8th Cir. 2012) (applying *Alvarez* to hold that fraud prohibitions are permissible content-based restrictions). Fraud includes "a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment." *Black's Law Dictionary* 731 (9th ed. 2009)

*see also Animal Legal Def. Fund v. Reynolds*, 8 F.4th 781, 786 (8th Cir. 2021) ("[I]ntentionally false speech undertaken to accomplish a legally cognizable harm may be proscribed without violating the First Amendment."). The election-disinformation provision fits squarely within this category. It prohibits transmitting information that a person knows to be materially false (knowing misrepresentation of the truth) with the intent to impede or prevent another person from exercising a fundamental right (action to the person's detriment).

Because the election-disinformation provision prohibits only speech intended to fraudulently impede voting rights, that law does not proscribe any speech protected by the First Amendment. The district court therefore correctly dismissed MVA's claim.

MVA argues that its false statements are political speech that the First Amendment protects. (Appellants' Br. 21–28.) The district court rightly concluded it is not. (Add. 10 & n.8.) Political speech is "interactive communication concerning political change." *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 186 (1999). It extends to advocacy regarding who should be elected, as well as to political policy generally or advocacy of the passage or defeat of legislation. *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 205 (2003). It does not, however, extend to statements of what the existing law is. There is a significant difference between the statements "People with felony convictions *cannot* vote" and "People with felony

convictions *should not be allowed to* vote." One is verifiable as a true or false statement of current law; the other is an advocacy statement about what the law should be. Nor does a statement's relation to voting qualifications convert statements about the present state of the law into political speech. If MVA publicly declared "It is illegal to drive while wearing a seatbelt," its declaration would indisputably be non-political speech. Changing the action MVA declares illegal does not alter that conclusion.

The cases MVA cites regarding matters of public concern are not to the contrary. The Attorney General does not dispute that election procedures can be a matter of public concern. Nor does the Attorney General dispute that the First Amendment protects MVA's ability to engage in speech about what voting procedures *ought* to be. But as the Supreme Court has recognized:

> That speech is used as a tool for political ends does not automatically bring it under the protective mantle of the Constitution. For the use of the known lie as a tool is at once at odds with the premises of democratic government and with the orderly manner in which economic, social, or political change is to be effected.

*Garrison v. Louisiana*, 379 U.S. 64, 75 (1964). Consistent with this holding, and in one of the cases cited by MVA as reaffirming "black-letter principle[s]," the Court provided a clear delineation what is and is not protected by the First Amendment: speech "about electoral choices at issue in the polling place" is protected, but speech "about voting requirements and procedures" is not. *Mansky*, 585 U.S. at 18 n.4.

Nor is MVA's example of politicians running on the merits or demerits of various voting procedures relevant. (Appellants' Br. 26–27.) Like MVA, such politicians remain free to assert, as policy positions, that states should require voter identification, abolish absentee voting, or allow sixteen-year-olds to vote. It is only when such individuals knowingly and falsely state those positions as current facts— and do so with the intent to deny voting rights—that they violate the disinformation provision. Accordingly, that provision does not prohibit any of the advocacy implicated by the cases MVA cited.

## B. The Prohibition on MVA's False Statements Regarding Election Procedures Satisfies Strict Scrutiny.

Even if strict scrutiny applies to the election-disinformation provision, the district court correctly concluded that the statute passes that scrutiny. (Add. 9.) States have a compelling interest in protecting voters from confusion about the who, when, where, and how of voting. *Burson*, 504 U.S. at 199. The Minnesota Legislature recognized the rise in misinformation on these topics and the need to address it. *E.g.*, *Hearing Before the H. Pub. Safety, Fin. & Pol'y Comm.*, 2023 Leg., 93d Sess. at 1:10:50–:11:12 (Minn. Feb. 21, 2023) (statement of Rep. Walter Hudson). Moreover, examples from other states show that election misinformation is an actual problem in need of a response. *E.g.*, *Nat'l Coal. on Black Civ. Participation v. Wohl*, 498 F. Supp. 3d 457, 465–66 (S.D.N.Y. 2020) (describing robocall that contained false information intended to discourage absentee voting); *League of Women Voters*

*of N.H. v. Kramer*, No. 1:24-cv-00073 (D.N.H. Sept. 19, 2024) (unpublished) (same).

MVA ignores this evidence, falsely claiming that neither the Attorney General nor the district court identified any evidence that supports the law. (Appellants' Br. 54.) But the district court cited legislative hearing discussions regarding the rise of election misinformation. (Add. 10.) And the Attorney General gave the further example of criminals sending false messages that people could vote via text. (App. 132–33; R. Doc. 25, at 8–9.) This is clear "empirical evidence" in support of the need for the law.

The district court also correctly concluded that the disinformation provision is narrowly tailored. (Add. 10.) It has an intent requirement narrowly targeted at voting rights; it has a knowledge requirement that limits culpability to those who know they are lying; and its identified topics are focused on voting mechanics.

MVA nonetheless argues that the disinformation provision somehow perpetuates, rather than stops, fraud. (Appellants' Br. 51–52.) Initially, this argument is directed towards the statute's remedy procedures, and it has no bearing on whether the statute's narrow proscriptions on speech comport with the First Amendment. Relying on *281 Care Committee v. Arneson*, MVA argues that litigants might weaponize the disinformation provision to harass opponents. 766 F.3d 774 (8th Cir. 2014). But the disinformation provision is distinguishable from the statute at issue

in *281 Care Committee* in a significant way. The *281 Care Committee* statute prohibited false statements about the effects of ballot questions and was "immensely problematic" because it allowed anyone to file an administrative complaint without constraint to "explicit guidelines or ethical obligations." 766 F.3d at 790. Proceedings under the disinformation provision, in contrast, occur in state district court. Such courts, by both rule and inherent authority, can sanction spurious litigants who bring meritless claims. Minn. R. Civ. P. 11.03; *Buckner v. Robichaud*, 992 N.W.2d 686, 689–91 (Minn. 2023); *see also Seagate Tech., LLC v. W. Digit. Corp.*, 854 N.W.2d 750, 761 (Minn. 2014) (contrasting court's inherent authority to sanction litigants with the authority of other tribunals).

MVA also suggests that better alternative exists and that rather than prohibiting knowingly false speech intended to deny voting rights, Minnesota should instead engage in counterspeech. (Appellants' Br. 52.) But the example[6] MVA provides of a case in which counterspeech was held sufficient is of a fundamentally different character. *Alvarez* dealt with false speech about military honors. 576 U.S. 709, 713 (2012) (plurality opinion). The false speech did not deny or try to deny any

---

[6] MVA also cites *Whitney v. California*, 274 U.S. 357 (1927). But the portion MVA cited is from a concurrence, and the Court was not even addressing any First Amendment arguments in the case. *See id.* at 377 (Brandeis, J., concurring); *id.* at 362 (majority opinion) (identifying only due-process and equal-protection issues as properly before the Court); (Appellants' Br. 52).

rights. Here, in contrast, Minnesota is addressing speech calculated to deny one of the most fundamental rights. Counterspeech is cold comfort to Minnesotans if they only hear it after election day, or never at all. It is thus insufficient to address the harms that the disinformation provision targets.

## III. THE ELECTION-INTEGRITY STATUTE IS NOT A PRIOR RESTRAINT.

MVA argues the district court improperly rejected their claim that the election-integrity statute constitutes a prior restraint because it creates procedures to obtain injunctive relief before a violation occurs. (Add. 11–12). The district court properly rejected this claim because the statute does not prohibit speech before it is uttered.

Prior restraint refers to "administrative and judicial orders forbidding certain communications . . . in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (emphasis omitted). The prior-restraint doctrine is narrow, applying to orders "suppressing *future* speech," as well as "informal procedures" undertaken by officials that is designed to chill expression. *Multimedia Holdings Corp. v. Cir. Ct. of Fla.*, 544 U.S. 1301, 1306 (2005); *Viewpoint Neutrality Now! v. Bd. of Regents of the Univ. of Minn.*, 109 F.4th 1033, 1043 (8th Cir. 2024). The district court correctly recognized that election-integrity statute's injunction provision is not such a restraint. On its own, it does not forbid any future communications, nor is the mere existence of the statute itself an

"informal procedure." Instead, the statute authorizes an injunctive remedy in the event someone is about to violate the law. But the creation of procedures for such an injunction is not itself an order or procedures prohibiting speech. Moreover, injunctive relief would follow a court proceeding that provides due process, as well as the opportunity to appeal that injunction.

MVA attempts to obviate the distinction between a statute authorizing proceedings and the proceedings themselves. MVA argues that "government action threatening penalties for future speech goes by the name prior restraint." (Appellants' Br. 37 (quoting *Backpage.com, LLC v. Dart*, 807 F.3d 229, 235 (7th Cir. 2015).) MVA's framing ignores that prior restraint still requires "government action"; a procedural framework for such action is not enough. While a court order restraining further speech (or threats of obtaining such an order) could be a prior restraint (whose constitutionality would vary from case to case), the subdivision creating that process still is not a prior restraint.

And even if the enforcement provision could itself be a prior restraint, the district court still correctly dismissed MVA's facial claim against the Attorney General. Because the Attorney General has never threatened enforcement against MVA, it would ordinarily have to show that the law is an unconstitutional prior restraint in all its applications. *Wash. State Grange v. Wash. State. Republican Party*, 552 U.S. 442, 449 (2008). The Supreme Court, however, has recognized that

(because prior restraints may keep a potential speaker from speaking in the first place) licensing statutes that constitute a prior restraint may sometimes be subject to facial challenges even without such a showing. *See City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 757–58 (1988). The enforcement provision, however, is not a licensing statute, and therefore not subject to such a challenge. Unlike the licensing laws that typically trigger prior-restraint challenges, the election-integrity statute imposes no consequences for speaking without obtaining prior permission. *See, e.g.*, *id*. at 753 (requiring license *before* placing news racks on public property). Until and unless a plaintiff obtains a court order, nothing restrains MVA from spreading election disinformation before speaking it. And in cases where there is such an order, it is that order—not the challenged statute—that constitutes a prior restraint.

Additionally, the Court has reasoned that facial challenges may be appropriate where statutes have lacked "express standards" that can make it difficult to differentiate "as applied" the difference between a legitimate denial of permission to express a message and an illegitimate censorship. *Id.* at 758. The election-integrity statute, however, provides express standards: the voter-intimidation prohibition requires an actionable threat intended to interfere with voting behavior, and the election-disinformation prohibition requires a knowingly false statement intended to

interfere with voting rights. As a result, there is no basis for the Court to deviate from the usual course and permit a facial challenge.

Moreover, even if the Court reaches the facial challenge, the law is facially constitutional. Prior restraints are not always unconstitutional. Instead, they may be upheld when procedural safeguards "obviate the dangers of a censorship system." *City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774, 779 (2004). Those safeguards are: (1) strict time limits leading to a speedy decision and minimizing any prior-restraint-type effects; (2) a procedure that will assure a prompt final judicial decision to minimize the deterrent effect of an interim and possibly erroneous prior restraint; and (3) requiring that the party seeking to restrain speech bears the burden of proof. *Id.*

Typically, ordinary state judicial-review procedures will satisfy the timeliness requirements of these safeguards. *Id.* at 781–82. Indeed, the Court held that so long as "the courts remain sensitive to the need to prevent First Amendment harms and administer those proceedings accordingly," timeliness concerns are satisfied. *Id.* The Court further recognized that whether courts were meeting timeliness concerns is "a matter normally fit for case-by-case determination rather than a facial challenge." *Id.* at 782.

These safeguards are amply satisfied by Minnesota's procedures. Minnesota court rules give judges significant discretion to modify procedures as needed to

address First Amendment sensitivities. *E.g.*, Minn. R. Gen. Prac. 1.02. And any injunction would be immediately appealable to the Minnesota Court of Appeals, where that court could likewise expedite proceedings. Minn. R. Civ. App. P. 103.03, 126.02. These procedural features will generally satisfy the timeliness requirements—and to the extent there are concerns in particular cases, those issues are appropriately addressed on a case-by-case basis, not this hypothetical case. *City of Littleton*, 541 U.S. at 782.

Minnesota's procedures also satisfy the burden-of-proof requirement. The party seeking an injunction bears the burden of proof. Minn. R. Civ. P. 65.01–.02; *St. Jude Med., Inc. v. Carter*, 913 N.W.2d 678, 684 (Minn. 2018).

Because Minnesota's injunctive procedures satisfy the timeliness requirements and place the burden of proof on the party seeking the injunction, they provide the requisite safeguards to make the election-integrity statute's enforcement provision constitutional.

MVA resists this conclusion by asserting that the district court did not provide any examples of orders meeting these procedural safeguards. (Appellants' Br. 38.) This argument merely reinforces in impropriety of MVA's *facial* challenge against the enforcement provision. The district court did not give any such examples because (as far as the Attorney General is aware) no court has ever entered any order under the enforcement provision. In any case, MVA's own argument is subject to the same

objection: it has not cited any orders that a Minnesota court has issued without following the safeguards required by the First Amendment. Whether a prior restraint would be appropriate under the enforcement provision will turn on the facts of the specific case, and the district court rightly rejected MVA's facial challenge to the statute's enforcement procedures.

## IV. THE ELECTION-INTEGRITY STATUTE IS NOT UNCONSTITUTIONALLY VAGUE.

Finally, the district court considered and rejected MVA's vagueness challenge. (Add. 12–14.) MVA identifies a panoply of terms that it claims are impermissibly vague. (Appellants' Br. 46–50.) The district court correctly rejected this claim.

### A. The Election-Integrity Statute Reaches Only Unprotected Conduct and Is Not Unconstitutionally Vague in All Applications.

For a statute to be void for vagueness, it must fail to "provide a person of ordinary intelligence fair notice of what is prohibited" or be so standardless that "it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). If the statute implicates no constitutionally protected conduct, then a vagueness challenge can succeed only if the enactment is impermissibly vague in all applications. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 494–95 (1982).

This is the case here. The election-integrity statute reaches only speech that is unprotected by the First Amendment. As a result, it would be unconstitutional only if it were impermissibly vague in all applications. But this is not the case.

When a statute only proscribes conduct that is knowingly performed with the intent of taking actions that the statute prohibits, a person has fair warning or knowledge that his act violates the law. *United States v. Lee*, 935 F.2d 952, 956 (8th Cir. 1991). The election-integrity statute meets these requirements. Each substantive act prohibited by the statute requires an intent, either to interfere with election activities or to prevent the exercise of voting rights. Accordingly, there are indisputably applications in which the law is not impermissibly vague. As a result, the law is not impermissibly vague "in all applications," and MVA's claims were correctly dismissed.

**B.** **Even If the Election-Integrity Statute Reaches Some Protected Conduct, It Is Sufficiently Definite to Be Constitutional.**

Even if the statute reaches some First Amendment-protected speech, its terms are sufficiently definite to survive review. Such laws are constitutional if they incorporate a "high level of definiteness." *Woodis v. Westark Cmty. Coll.*, 160 F.3d 435, 438 (8th Cir. 1998). Even so, "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). Courts thus uphold statutes impacting First Amendment rights where it is clear what the statute as a whole prohibits. *Id.*; *see also Fams. Achieving*

*Indep. & Respect v. Neb. Dep't of Soc. Servs.*, 111 F.3d 1408, 1418 (8th Cir. 1997) (rejecting vagueness challenge where terms "may not satisfy those intent on finding fault at any cost [but] are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with") (internal quotation and citation omitted).

### 1. The Election-Integrity Statute's Intent Elements Ensure Notice of What Conduct Is Prohibited.

Each substantive provision of the election-integrity statute contains an intent element, and these requirements are fatal to MVA's vagueness claim because they "relieve the statute of the objection that it punishes without warning an offense of which the accused was unaware." *Screws v. United States*, 325 U.S. 91, 102 (1945). Thus, where a statute only prohibits conduct (speech or otherwise) that is knowingly done with the purpose of doing what the statute prohibits, the accused cannot complain about a lack of warning. *Id.; see also United States v. Eklund*, 733 F.2d 1287, 1303 (8th Cir. 1984) (concluding statute not vague where it included scienter requirement).

Here, all three substantive provisions of the election-integrity statute have an essential intent element. The voter-intimidation prohibition requires intent to compel or restrain voting. The election-disinformation prohibition requires intent to prevent a person from exercising the right to vote. And the interference prohibition requires intent to interfere with voting, registering, or aiding another in the same. As a result,

there is no violation of the statute without intent. It only punishes "for an act knowingly done with the purpose of doing that which the statute prohibits." *Screws*, 325 U.S. at 102. The district court therefore correctly dismissed MVA's vagueness claim.

## 2. The Election-Integrity Statute Uses Ordinary Language That Provides Notice of What the Statute Prohibits.

Even without the intent requirement, MVA's quibbles with the statute's terms would still fail, because the common understanding of those terms provides clear notice of what they prohibit. For a statute to fall to a vagueness challenge, it must predicate violations on "wholly subjective judgment without statutory definitions, narrowing context, or settled legal meanings, such as whether the defendant's conduct was annoying or indecent." *Williams*, 553 U.S. at 306 (internal quotations omitted). A statute is not, however, rendered unconstitutionally vague because "it do[es] not mean the same thing to all people, all the time, everywhere." *Roth v. United States*, 354 U.S. 476, 491 (1957). Rather, for a statute to be vague it must have no standard of conduct specified at all. *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971) (holding statute unconstitutionally vague where it prohibited conduct "annoying to persons passing by").

Even for statutes that restrict expressive activity, the Constitution does not require that statutes provide perfect clarity or precise guidance. *See Williams*, 553 U.S. at 303. Instead, ordinary terms may express ideas "which find adequate

interpretation in common usage and understanding." *St. Croix Waterway Ass'n v. Meyer*, 178 F.3d 515, 520 (8th Cir. 1999). Speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is valid in the vast majority of its intended applications. *Hill v. Colorado*, 530 U.S. 703, 733 (2000).

Turning to the specifics of MVA's claim, MVA objects to "threat" and "damages, harm, or loss" in the voter-intimidation provision, "impede" in the election-disinformation provision, and "interfere" in the interference provision. Where, as here, the statute does not define or explain what its phrases mean, courts apply a word's common and ordinary meaning, considering the context in which it is used. *Calzone v. Summers*, 942 F.3d 415, 426 (8th Cir. 2019). When the common and ordinary meanings of the election-integrity statute's words are considered, the likelihood that anyone would not understand them is "quite remote." *See Hill*, 530 U.S. at 732.

**Threat.** Threat means "a declaration of an intention to punish or hurt." *Oxford American Dictionary of Current English* 846 (1999). Similarly, Black's Law Dictionary defines "threat" as "a communicated intent to inflict harm or loss on another or on another's property, esp[ecially] one that might diminish a person's freedom to act voluntarily or with lawful consent; a declaration, express or implied, of an intent to inflict loss or pain on another." Threat, *Black's Law Dictionary* (11th

ed. 2019). This common understanding fits perfectly with the statutory context and is not so amorphous that is unconstitutionally vague.

***Damage, Harm, or Loss.*** "Damage" means "harm or loss." *Oxford American Dictionary of Current English* 195. "Harm" in turn means "hurt." *Id.* at 359. And "loss" in turn means "a person, thing, or amount lost." *Id.* at 469. With these definitions, a person of reasonable intelligence can tell what sort of threats of injury are prohibited.

***Impede.*** Impede means to "retard by obstructing; [to] hinder." *Oxford American Dictionary of Current English* 392. In context, the election integrity statute therefore prohibits threats or false statements made with the intent of hindering voting or other election activities. A person of ordinary intelligence can discern what this prohibits, and it is not unconstitutionally vague.

***Interfere.*** "Interfere" means to "meddle[ or] obstruct a process." *Id.* at 412. This commonly understood definition provides sufficiently definite notice of what the election-integrity statute prohibits: a court must determine whether someone intentionally obstructed voting rights. The term is accordingly not vague.

MVA offers two arguments in response. Their first argument ignores the statute's text and instead relies on the County Attorney's counterclaims. (Appellants' Br. 46–48.) MVA argues that the mere existence of the counterclaim means that the statute is necessarily vague. But as the district court aptly recognized,

the County Attorney "is not the arbiter of the meaning of the statute," and the fact that he counterclaimed "does not affect . . . analysis of whether the statute is vague." (Add. 6 n.4, 13.)

As part of this argument, MVA also suggests that the mere possibility of ultimately meritless lawsuits renders the statute unconstitutional.[7] But this has never been, nor could it ever coherently be, the law. The Supreme Court has repeatedly allowed causes of action (both statutory and common law) to stand notwithstanding that the party bringing a claim may ultimately be unsuccessful in showing that the challenged speech is actionable. For example, a consumer-fraud claim may fail because it turns out the challenged statements were true, or a prosecution for making threats may fail because the state cannot prove the required mens rea. *See, e.g., Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (dismissing consumer fraud claims because "the advertisements were not fraudulent"); *Counterman v. Colorado*, 600 U.S. 66, 82 (2023) (reversing threats conviction for failure to show required mens rea); *see also, e.g., McGuire v. Bowlin*, 932 N.W.2d 819, 829–30 (Minn. 2019) (dismissing defamation claims based on qualified privilege).

---

[7] To be clear, the Attorney General is not suggesting that Anoka County's counterclaim is a meritless claim, but merely that MVA is using the counterclaim to invoke the specter of one.

That a claim may ultimately lack evidentiary support is not a basis for overturning the law under which the claim is made. Otherwise, the mere possibility that someone could bring a meritless fraud (or threat, or defamation) claim would mean that no one could ever bring such a claim. That such claims do exist is fatal to MVA's argument to the contrary.

MVA's second response is that, other than true threats, the meaning of impeding or interfering with voting rights is unknown. (Appellants' Br. 49–50.) But examples of such interference abound. For example, someone could mail out leaflets stating that election day is on Wednesday, or make robocalls stating you must have graduated high school to vote, or text people that if they vote absentee their absentee information will be used to enforce a supposed vaccination mandate. All of those claims are false. And if a person chooses not to exercise their voting rights because of such statements, the statement has impeded or interfered with voting rights. While MVA is "intent on finding fault [with the statute] at any cost," such applications are clearly "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with." *Fams. Achieving Indep. & Respect*, 111 F.3d at 1418. The district court therefore rightly rejected MVA's vagueness claim.

### 3. There is No Risk of Discriminatory Enforcement Because the Election-Integrity Statute's Ordinary Language Provides a Standard of Enforcement.

A statute can be unconstitutionally vague if it does not provide explicit standards for those who will apply the law to reduce the risk of discriminatory enforcement. *Thorburn v. Austin*, 231 F.3d 1114, 1120 (8th Cir. 2000). As an initial matter, MVA has waived this vagueness argument. Other than a passing mention when discussing the standard for vagueness challenges, MVA does not present any argument that the law encourages discriminatory enforcement. (Appellants' Br. 46.) And mentioning an issue in passing without supporting argument or legal authority forfeits review of that issue. *Milligan v. City of Red Oak*, 230 F.3d 355, 360 (8th Cir. 2000).

Even if the Court reaches this issue, the election-integrity statute is constitutional. Laws are not unconstitutionally vague as long as they provide "minimal guidelines" to govern law enforcement. *St. Croix Waterway*, 178 F.3d at 521. Even if a statute regulates expressive activity, no real risk of discriminatory enforcement exists when a statute makes clear what conduct it prohibits. *Thorburn*, 231 F.3d at 1121; *see also United States v. Kaylor*, 877 F.2d 658, 661 (8th Cir. 1989) (rejecting vagueness challenge where common meaning of phrases used in statute provided standards of enforcement).

Here, the statute uses common words to describe the conduct it prohibits. Moreover, the falsehoods the statute is directed at pertain to objectively determinable facts, such as voting times and locations. Because the statute makes clear the conduct it prohibits, there is no appreciable risk of discriminatory enforcement. Thus, the statute is easily understood to people of ordinary intelligence, and it sets precise standards of enforcement.

## V. IF THE COURT REACHES MVA'S REMAINING ARGUMENTS, THEY ARE MERITLESS.

Because MVA's remaining arguments concern its facial challenges to the election-integrity statute, the Court need not reach those arguments. If, however, the Court chooses to reach those facial challenges, they are meritless.

Facial challenges to statutes are disfavored. *Moody*, 603 U.S. at 723. In the First Amendment context, a facial challenge can only succeed if a "substantial number" of the law's applications are unconstitutional as judged in relation to its plainly legitimate sweep. *United States v. Stevens*, 559 U.S. 460, 473 (2010).

In considering a facial challenge, the first step is assessing the challenged law's scope, which includes considering the activities that the law prohibits or regulates. *GLBT Youth in Iowa Schs. Task Force*, 114 F.4th at 669. The second step is determining which of the law's applications violate the First Amendment. *Id*. at 670. The last step is to measure the unconstitutional applications against the

remaining provisions. *Id*. Applying this framework to the election-integrity statute's provisions shows that it is facially constitutional.

### A. The Voter-Intimidation Provision Is Facially Constitutional.

Not all laws that regulate expressive conduct trigger First Amendment scrutiny. *TikTok, Inc. v. Garland*, No. 24-656, 2025 WL 222571, at *3 (Jan. 17, 2025). In particular, true threats may be prohibited. *Riehm v. Engelking*, 538 F.3d 952, 963 (8th Cir. 2008). A statement is a true threat if a reasonable person would interpret the statement as a serious expression of an intent to harm or cause injury to another. *Doe v. Pulaski Cty. Special Sch. Dist.*, 306 F.3d 616, 624 (8th Cir. 2004). Whether a statement is a true threat does not depend on the mental state of the speaker. *Counterman*, 600 U.S. at 74. But, to avoid chilling effects, states may only take action against such threats upon a showing of a mens rea of recklessness or greater. *See id.* at 78–82 (recognizing that "purposefully" and "knowingly" mens reas are higher standards and setting mens rea floor at recklessness).

Minnesota's voter-intimidation prohibition satisfies these requirements, such that none of its applications violate the First Amendment. First, the statute requires that a threat or attempted threat "would cause a reasonable person to feel intimidated." Minn. Stat. § 211B.075, subd. 1(b). This satisfies the reasonable-recipient interpretation threshold necessary for such threats to be true threats. Second, the statute requires that the person making the threat have "intent" to alter

voting or vote-aiding behavior. *Id.*, subd. 1(a)(1)-(2). This satisfies the mens rea requirement. Indeed, it goes further than what the supreme court required in *Counterman*, because the voter-intimidation prohibition requires a specific intent, even though that case held that a lesser intent requirement (recklessness) passed constitutional muster. 600 U.S. at 79. And because the voter-intimidation provision prohibits only these true threats, it is a permissible content-based restriction.

Even if strict scrutiny applies, the voter-intimidation provision passes that scrutiny. Strict scrutiny requires that a law be justified by a compelling state interest and was narrowly tailored in pursuit of that interest. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022). As previously discussed, Minnesota has a compelling interest in protecting voters from undue influence like the threats covered by the voter-intimidation provision. *Burson*, 504 U.S. at 199.

MVA's argument that such threats are not an "actual problem" is not persuasive. (Appellants' Br. 53–55.) As previously discussed, the legislative record notes the growing threat of voter intimidation. *E.g.*, *Hearing Before the H. Judiciary, Fin. & Civ. L. Comm.*, 2023 Leg., 93d Sess. at 42:10–43:25 (Minn. Mar. 2, 2023) (statement of Rep. Emma Greenman). Moreover, states can rely on the recent experiences of other states in justifying their policies. *Ramirez v. Collier*, 595 U.S. 411, 444 n.2 (2022) (Kavanaugh, J., concurring). States "need not wait until widespread . . . harm" but can instead "make a rational predication of the

consequences of inaction and of the effects of regulation in furthering governmental interests." *Turner Broad. Sys., Inc. v. Fed. Commc'n Comm.*, 520 U.S. 180, 212 (1997) (internal quotation marks omitted); *cf. Assoc. of Cmty. Orgs. For Reform Now v. St. Louis Cnty.*, 930 F.2d 591, 596 (8th Cir. 1991) ("The government need not wait for accidents to justify safety regulations."). Nor is MVA's attempted distinction regarding in-person threats persuasive. If anything, the unknown about where an anonymous threat is coming from—and about an anonymous speaker's ability to make good on the threat—are likely to increase voter apprehension, not dilute it.

The voter-intimidation provision is narrowly tailored in pursuit of Minnesota's interest in protecting voters. Indeed, MVA does not propose any way in which the statute could be more narrowly tailored to achieve that interest. MVA identifies only one alternative to the election-integrity statute as a whole: counterspeech. (Appellants' Br. 55.) But counterspeech is not a response to threats. As a result, the voter-intimidation provision is narrowly tailored, and it passes strict scrutiny.

Finally, even if some applications of the voter-intimidation provision trigger strict scrutiny, MVA fails to address the final step of the overbreadth analysis: weighing constitutional applications against unconstitutional ones. MVA concedes that the voter-intimidation provision has a plainly legitimate sweep because it applies to true threats. (Appellants' Br. 41.) But rather than analyzing how those

constitutional applications compare to any unconstitutional ones, MVA focuses solely on the county attorney's counterclaim. (*Id.* at 40.) Even accepting the dubious premise that the counterclaim is barred by the First Amendment, this does not establish that a substantial number of applications are unconstitutional in comparison to the admittedly constitutional ones. Accordingly, MVA's arguments in support of this facial challenge fail.

**B.      The Election-Disinformation Provision is Facially Constitutional.**

For many of the reasons that the election-disinformation provision is constitutional as-applied to MVA's proposed speech, that provision is also facially constitutional. Restated briefly, states can "prohibit messages intended to mislead voters about voting requirements and procedures" without violating the First Amendment, which is exactly what the election-disinformation provision achieves. *Mansky*, 585 U.S. at 18 n.4. And even before *Mansky*, *Alvarez* made clear that the fraudulent statements prohibited by the provision are entitled to no First Amendment protection. *See* 567 U.S. at 723. Finally, even if the provision is subject to strict scrutiny, it is narrowly tailored to protect Minnesota's compelling interest because of its knowledge and intent requirements.

These features establish that the election-disinformation provision has a substantial number of constitutionally permissible application. And even if the Court could envision particular unconstitutional applications, those applications do not

outweigh the statute's plainly legitimate sweep. Indeed, Appellants notably do not identify any speech that would be simultaneously prohibited by the statute but permitted by the First Amendment. They give an example of wearing a "Please ID Me" button, but that button is not prohibited by the statute because it does not state that voter identification is required; it only *asks* poll workers to ask for the wear's identification. (Appellants' Br. 41.)

Because MVA fails to identify any protected speech implicated by the statute, it also entirely fails to address weighing the speech that may be permissibly prohibited against speech that the First Amendment permits. Since MVA's argument does not address this step of the facial challenge analysis, it fails. Accordingly, the Court should affirm dismissal of their facial challenge to the election-disinformation provision.

### C.    The Interference Provision Is Facially Constitutional.

It is not an abridgement of freedom of speech to make a course of conduct illegal merely because the conduct was carried out by speech. *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 62 (2006); *Hurley v. Irish- Am. Gay, Lesbian, & Bisexual Grp. of Bos.*, 515 U.S. 557, 572 (1995). Rather, it is only when such laws, as-applied, impact speech that the First Amendment is implicated at all. *See Holder v. Humanitarian L. Project*, 561 U.S. 1, 28 (2010) ("The law here may

be described as directed at conduct . . . but as applied to plaintiffs the conduct triggering coverage under the statute consists of communicating a message.").

The interference provision falls into this category, because its plain language does not expressly target expressive conduct. It prohibits the act of interfering with voting rights. Minn. Stat. § 211B.075, subd. 3. While particular acts (such as false claims about election mechanics) may result in courts being required to determine whether the interference provision as-applied to that act violates the First Amendment, the provision does not facially implicate the First Amendment at all.

Moreover, even if the Court disagrees and concludes that the interference provision creates some incidental burden on First Amendment freedoms, the provision nonetheless passes constitutional muster. These incidental burdens are permissible so long as "the neutral regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Rumsfeld*, 547 U.S. at 67 (internal quotation marks omitted).

Minnesota has a substantial interest in preventing interference with the right to vote. *Burson*, 504 U.S. at 199. And that interest would be achieved less effectively if such interference were not prohibited.

### D. The Vicarious-Liability Provision Is Facially Constitutional.

MVA devotes one paragraph of its brief to the facial constitutionality of the vicarious-liability provision, and they do so without citation to any authority.

(Appellants' Br. 28–29.) Accordingly, even if they had properly preserved this claim below, MVA has forfeited the issue by failing to adequately brief it here. *Milligan*, 230 F.3d at 360. But even if the Court considers their arguments, that provision is facially constitutional.

MVA alleged that the vicarious-liability provision was facially unconstitutional because it prohibits individuals from intentionally advising, counseling, or inciting true threats and false speech about election mechanics. (App. 25; R. Doc. 13, at 25.) But the First Amendment does not impede states from prohibiting actions that would aid or abet prohibited behavior, even if those actions are speech. Accordingly, the vicarious-liability provision does not reach any protected speech.

Conspiracies to violate the law are properly subject to prohibition, notwithstanding that conspiracies necessarily entail what would otherwise be First Amendment-protected associational and speech activities. *Scales v. United States*, 367 U.S. 203, 229 (1961). Likewise, speech that goes beyond merely advocating for changes in the law and provides advice regarding how to violate the law or incites violations is not protected. *United States v. Buttorff*, 572 F.2d 619, 624 (8th Cir. 1978). This is in part because such speech is intended to bring about an unlawful result, and it is therefore unprotected as having no societal value. *United States v. Hansen*, 599 U.S. 762, 783 (2023). Moreover, even if such prohibitions would

violate associational First Amendment rights if they prohibited mere association with a particular group, the prohibition will withstand constitutional scrutiny if the prohibition only extends to those with an intent to accomplish the illegal act. *See Scales*, 367 U.S. at 229 (upholding statute because it required "clear proof that a defendant 'specifically intend(s) to accomplish (the aims of the organization) by resort to violence'").

The vicarious-liability provision meets these requirements, and thus it does not sweep up any protected speech. Like the statute at issue in *Scales*, these prohibitions all require that the vicariously liable party have an intent to further (either by advising, counseling, or inciting) the substantively prohibited acts of threating a voter or committing a fraud. That mens rea requirement satisfies the Constitution because it ensures that only speech that is made with an intent to bring about an unlawful result is prohibited. *See Hansen*, 599 U.S. at 767 (rejecting overbreadth challenge to law prohibiting "encouraging or inducing" violations of law). The election-integrity statute's vicarious liability provisions are therefore constitutional in all applications.

Moreover, even if the Court could hypothesize some times when the vicarious liability provision may be unconstitutionally applied, in nearly all cases, its intent requirements will ensure constitutional application. And more importantly, MVA fails to identify any in the one paragraph they devote to the issue. (Appellants' Br.

28–29.) MVA's argument against the facial validity of the vicarious liability provision therefore fails.

## CONCLUSION

The election-integrity statute does not violate MVA's First Amendment rights, is not a prior restraint, and is not void for vagueness. The Court should affirm dismissal of MVA's claims.

Dated: February 3, 2025        Respectfully submitted,

KEITH ELLISON
State of Minnesota
Attorney General


/s/ **Allen Cook Barr**
ALLEN COOK BARR, #0399094
NATHAN J. HARTSHORN, #0320602
Assistant Attorneys General

445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2131
(651) 757-1487 (Voice)
(651) 297-1235 (Fax)
allen.barr@ag.state.mn.us
nathan.hartshorn@ag.state.mn.us

ATTORNEYS FOR APPELLEE
KEITH ELLISON

|#5931730

## CERTIFICATE OF COMPLIANCE
## WITH FRAP 32

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,258 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14 pt Times New Roman font.

/s/**Allen Cook Barr**
ALLEN COOK BARR
Assistant Attorney General


## CERTIFICATE OF COMPLIANCE
## WITH 8th Cir. R. 28A(h)(2)

The undersigned, on behalf of the party filing and serving this brief, certifies that the brief has been scanned for viruses and that the brief is virus-free.

/s/**Brenda J. Hanson**
BRENDA J. HANSON

**CERTIFICATE OF SERVICE**

I hereby certify that on February 3, 2025, I caused to be filed the Brief of Appellee Keith Ellison with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/**Allen Cook Barr**
ALLEN COOK BARR