# NO. 24-3094

# In the
# United States Court of Appeals
# for the Eighth Circuit

Minnesota Voters Alliance; Mary Amlaw;
Ken Wendling; Tim Kirk

*Plaintiffs-Appellants,*

v.

Keith Ellison, in his official capacity as
Attorney General; Brad Johnson, in his
official capacity as Anoka County Attorney,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Minnesota
District Court No. 0:23-cv-02774-NEB

## PLAINTIFFS-APPELLANTS'  REPLY BRIEF

Douglas P. Seaton
James V. F. Dickey
Alexandra K. Howell
UPPER MIDWEST LAW CENTER
12600 Whitewater Dr., Suite 140
Minnetonka, MN 55343
(612) 428-7002

Reilly Stephens*
LIBERTY JUSTICE CENTER
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735
(512) 481-4400
*admission to be sought*

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................ i

TABLE OF AUTHORITIES .................................................. ii

REPLY ARGUMENT ..........................................................1

I.    Appellants Challenge the Constitutionality of the Speech Code, Which Implicates Both Facial and As-Applied Remedies. .....................................2

II.    Appellants' Speech Is on Matters of Public Concern and Thus Receives the Strongest First Amendment Protection Possible. ...................................5

III.    The Speech Code Squarely Targets Appellants' Speech, and the Counterclaim Is Conclusive Proof. ...............................................8

IV.    The Speech Code Perpetuates Fraud, and It Is Absurd to Call Appellants' Speech a Threat. .......................................................9

V.    The Speech Code Is Overbroad. .................................................12

VI.    The Speech Code Is Unconstitutionally Vague. .........................................14

VII.    The Speech Code Unconstitutionally Discriminates on Both Viewpoint and Content. ...................................................19

    A.    The Speech Code is subject to strict scrutiny, not intermediate scrutiny, because it targets Appellants' messages, not the manner of their speech. ...................................................20

    B.    No compelling interest justifies the Speech Code, and it is not actually necessary to solve any problem. ...........................................22

    C.    The Speech Code lacks meaningful limiting features, so the law is not narrowly or adequately tailored to any state interest. ..............25

VIII.    The Speech Code Is an Unconstitutional Prior Restraint. .........................27

CONCLUSION.....................................................................30

CERTIFICATE OF COMPLIANCE ....................................................31

CERTIFICATE OF SERVICE .......................................................32

# TABLE OF AUTHORITIES

**CASES**

*281 CARE Committee v. Arneson*, 766 F.3d 774 (8th Cir. 2014)................... passim

*Alexander v. United States*, 509 U.S. 544 (1993) .............................................. 3, 27

*Animal Legal Def. Fund v. Reynolds*, 8 F.4th 781 (8th Cir. 2021) .................... 21, 26

*Animal Legal Def. Fund v. Reynolds*, 89 F.4th 1065 (8th Cir. 2024)................ 20, 21

*Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015) ....................................29

*Bd. of Cty. Comm'rs v. Umbehr*, 518 U.S. 668 (1996) ...........................................19

*Brandy v. City of St. Louis*, 75 F.4th 908 (8th Cir. 2023)........................................10

*Brown v. Entm't Merchants Ass'n*, 564 U.S. 786 (2011).........................................22

*Burson v. Freeman*, 504 U.S. 191 (1992).................................................................23

*Citizens United v. FEC*, 558 U.S. 310 (2010)...........................................................2

*City of Chicago v. Morales*, 527 U.S. 41 (1999) .......................................................3

*Counterman v. Colorado*, 600 U.S. 66 (2023)..........................................................10

*Egbert v. Boule*, 596 U.S. 482 (2022)......................................................................18

*Emineth v. Jaeger*, 901 F. Supp. 2d 1138 (D.N.D. 2012)........................................28

*Fair Fight Inc. v. True the Vote,* 710 F. Supp. 3d 1237 (N.D. Ga. 2024) ...............17

*Fairley v. Andrews*, 578 F.3d 518 (7th Cir. 2009)....................................................29

*Frank v. Lee*, 84 F.4th 1119 (10th Cir. 2023)...........................................................23

*Free the Nipple - Springfield Residents Promoting Equal.*
  *v. City of Springfield*, 923 F.3d 508 (8th Cir. 2019) ..........................................2, 4

*Havlak v. Vill. of Twin Oaks*, 864 F.3d 905 (8th Cir. 2017)...................................13

*Hershey v. Jasinski*, 86 F.4th 1224 (8th Cir. 2023) .................................................29

*Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489 (1982) ....................15

*Iancu v. Brunetti*, 588 U.S. 388 (2019)................................................... 3, 4, 19, 21

*Keyishian v. Bd. of Regents*, 385 U.S. 589 (1967)...................................................14

*Kolender v. Lawson*, 461 U.S. 352 (1983)................................................................14

*Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750 (1988) ..................................3, 4

*McConnell v. Fed. Election Comm'n*, 540 U.S. 93 (2003).........................................6

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995).....................................24

*Minn. Voters All. v. Hunt*, 10 N.W.3d 163 (Minn. 2024)........................................7

*Minn. Voters All. v. Mansky*, 585 U.S. 1 (2018).....................................................6

*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024)..........................................3, 12, 13

*Nat'l Coal. on Black Civic Participation v. Wohl*,
  498 F.Supp.3d 457 (S.D.N.Y. 2020)......................................................................24

*Nat'l Coal. on Black Civic Participation v. Wohl*,
  661 F.Supp.3d 78 (S.D. N.Y. 2023)......................................................................11

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)...........................................11

*New York Times Co. v. United States*, 403 U.S. 713 (1971) .................................27

*Nieves v. Bartlett*, 587 U.S. 391 (2019) ................................................................19

*OPAWL v. Yost*, 118 F.4th 770 (6th Cir. 2024) .....................................................23

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) ................................................20, 21

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015)...................................................19, 21

*Reno v. ACLU*, 521 U.S. 844 (1997)......................................................................15

*Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995)...... 4, 19

*Screws v. United States*, 325 U.S. 91 (1945) .........................................................16

*Snyder v. Phelps*, 562 U.S. 443 (2011) ...................................................................6

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)..................................1, 27

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997)..............................23

*United States v. Albertini*, 472 U.S. 675 (1985) ....................................................20

*United States v. Dinwiddle*, 76 F.3d 913 (8th Cir. 1996).......................................20

*United States v. Lee*, 935 F.2d 952 (8th Cir. 1991),
  *vacated*, 6 F.3d 1297 (8th Cir. 1993) (en banc) ...............................................16

*United States v. Mackey*, 652 F.Supp.3d 309 (E.D.N.Y. 2023) .............................12

*United States v. Sryniawski*, 48 F.4th 583 (8th Cir. 2022) ....................................11

*United States v. Williams*, 553 U.S. 285 (2008) .......................................18

*Vance v. Universal Amusement Co.*, 445 U.S. 308 (1980)......................27

*Virginia v. Black*, 583 U.S. 343 (2003) ...............................................11

*Weaver v. Bonner*, 309 F.3d 1312 (11th Cir. 2002) ..............................28

*Whole Woman's Health v. Hellerstedt*, 579 U.S. 582 (2016) ..................3

STATUTES

Minn. Stat. §201.014, subd. 2a (2024).......................................................7

Minn. Stat. §204C.035.............................................................................24

Minn. Stat. §211B.06 ...............................................................................22

Minn. Stat. §211B.075 ........................................................................ 1, 22

Minn. Stat. §211B.075, subd. 1(a)(2) ......................................................19

Minn. Stat. §211B.075, subd. 1(b).................................................... 11, 16

Minn. Stat. §211B.075, subd. 2 ........................................... 19, 20, 22, 26

Minn. Stat. §211B.075, subd. 3 ................................................. 17, 19, 20

Minn. Stat. §211B.075, subd. 5 ...............................................................29

Minn. Stat. §211B.075, subd. 5(b).................................................... 25, 26

Minn. Stat. §211B.075, subd. 5(c)...........................................................25

OTHER AUTHORITIES

"Hinder," Cambridge Dictionary ..............................................................17

"Hinder," Merriam-Webster .....................................................................17

Mark Joseph Stern, *The Sam Alito Treatment*, Slate (June 14, 2018), .....6

Oxford American Dictionary of Current English 492 (1999) ..................18

RULES

Fed. R. Civ. P. 8 .......................................................................................5

CONSTITUTIONAL PROVISIONS

Minn. Const. art. VII, § 1 ......................................................................1, 7

# REPLY ARGUMENT

Minnesota Voters Alliance and the individual Appellants wish to make true statements about speech on quintessential matters of public concern, including that felons who have not been restored to the civil rights they lost when sentenced are ineligible to vote in Minnesota elections. The First Amendment protects them from having to painstakingly explain, to the satisfaction of the government and even random members of the public, that the Minnesota Constitution supports their viewpoint because it supersedes the recently passed Felon Voting Law. Minn. Const. art. VII, § 1.

Minnesota lawmakers expressly wrote and passed Minnesota Statutes section 211B.075 (the "Speech Code") to criminalize Appellants' viewpoint. They told the media so and essentially told Appellants to hush about their Felon Voting Law, or else. But the First Amendment forbids the State from forcing Appellants—to avoid prosecution—to "steer clear" of plain and honest speech and instead track a government-approved viewpoint or deliver a government-required qualifier of their views. And it's a real threat: Appellants have now been sued for this *exact* speech in this *exact* case because of the Speech Code.

Disagreement and dislike are not a license to silence opposing viewpoints. But that's what's happening, and it will continue unless the Court strikes down this Speech Code. Just as the Supreme Court said it a decade ago in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 163 (2014):

> [T]here is every reason to think that similar speech in the future will result in similar proceedings, notwithstanding [Appellants'] belief in the truth of [their] allegations.

The Speech Code criminalizes Appellants' true speech just because someone else believes it is false, just like the statute in *281 CARE Committee v. Arneson*, 766 F.3d 774 (8th Cir. 2014), which controls here.

When Appellants say what they believe is true, they are subject to tactical lawsuits simply because the government—or any third party—disagrees with them. That is intolerable under our First Amendment. The Court should so hold and reverse.

## I. Appellants Challenge the Constitutionality of the Speech Code, Which Implicates Both Facial and As-Applied Remedies.

Appellees, like the district court, confuse Appellants' challenge to the Speech Code because they attempt to force a pleading standard on a remedy question. But the distinction between facial versus as-applied "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens United v. FEC*, 558 U.S. 310, 331 (2010); *accord Free the Nipple - Springfield Residents Promoting Equal. v. City of Springfield*, 923 F.3d 508, 509 n.2 (8th Cir. 2019) ("The relief FTN seeks—a declaration that the entire ordinance is unconstitutional—reaches beyond the particular circumstances of these plaintiffs. FTN's claim is facial.").

In ruling on the constitutionality of the Speech Code "as applied" to Appellants, "[n]othing prevents this Court from awarding *facial* relief as the appropriate remedy for petitioners' *as-applied* claims." *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 604 (2016) (emphasis added). We repeat this crucial direction from the Supreme Court: an injunction against an entire law can be an appropriate remedy for an "as-applied claim." *Id.*

Appellants have alleged and argued that the Speech Code targets and chills *their* protected speech.[1] That is an "as-applied claim" in the sense that the statute applies to Appellants, which is the root of their fear. They have, however, also expressly alleged that the Speech Code is unconstitutional on its face because of the nature of the Speech Code's prohibitions.[2]

In the First Amendment context, as-applied claims often invoke facial remedies if (1) the statute is viewpoint-discriminatory, *Iancu v. Brunetti*, 588 U.S. 388, 399 (2019), (2) the statute is substantially overbroad, *Moody v. NetChoice, LLC*, 603 U.S. 707, 725-26 (2024), (3) the statute is unconstitutionally vague, *City of Chicago v. Morales*, 527 U.S. 41, 55 (1999), and (4) the statute creates a prior restraint on speech, *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 759 (1988); *see also Alexander v. United States*, 509 U.S. 544, 549 (1993). Those are the exact theories

---

[1] App. 19-20; R.Doc. 13; Am. Compl. ("AC") ¶¶68-76.

[2] App. 7, 24-25; R.Doc. 13; AC ¶¶22; 99-116.

Appellants pleaded in this case. As this Court has summarized, what matters for a "facial" or "as-applied" challenge is if the "relief [sought]…reaches beyond the particular circumstances of these plaintiffs." *Free the Nipple*, 923 F.3d at 509 n.2.

Take Appellants' viewpoint-discrimination claim, which the State failed to address in opposition, and which the County only addressed in a throwaway footnote.[3] At every step of this case, Appellants have argued that the Speech Code is viewpoint-discriminatory because it criminalizes speech *against* illegal voting but has nothing to say about encouraging people to illegally vote despite a constitutional prohibition.[4] This challenge is axiomatically a facial challenge: "[t]he Court's finding of viewpoint bias end[s] the matter." *Iancu*, 588 U.S. at 399. The Speech Code discriminates against Appellants' viewpoint. It is "an egregious form of content discrimination" and "presumptively unconstitutional," on its face. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829-30 (1995); *see also Lakewood*, 486 U.S. at 759 ("Therefore, a facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers.").

---

[3] County Br. 33 n.4.

[4] App. 12-14, 25-26; R.Doc. 13; AC ¶¶41, 107-116; App. 176; R.Doc. 32; Pls.' Opp. 22-23.

The district court should not have tried to parse out whether Appellants' viewpoint-discrimination claim is "facial" or "as-applied."[5] Instead, the court should have asked whether the Speech Code discriminates on viewpoint. If so, it must be held unconstitutional in all of its applications. Determining whether the *relief ordered* should be facial or as-applied goes to the *remedy*, not *whether the law is unconstitutional* and therefore whether a claim is plausibly pleaded under Rule 8.

## II. Appellants' Speech Is on Matters of Public Concern and Thus Receives the Strongest First Amendment Protection Possible.

Appellees claim that Appellants' speech concerns election procedures and is not political.[6] Under this flawed view, the nature of political speech turns on whether speech concerns "what existing law is" and whether it uses State-approved, opinion-focused normative language like "should."[7] Appellees present no caselaw to support this restrictive, paternalistic definition of political speech.

Appellants believe and say that felons who haven't been restored to civil rights cannot vote or register to vote under the Minnesota Constitution.[8] This is inherently commentary on the unconstitutional Felon Voting Law. It is political speech. It is "[speech] on matters of public concern." *Snyder v. Phelps*, 562 U.S. 443, 451-52

---

[5] *Cf.* App. 336-340; R.Doc. 53; Add. 7-11.

[6] State Br. 12-14; County Br. 47-48.

[7] State Br. 13-14; County Br. 28, 43, 48.

[8] App. 1-2, 7-8, 17; R.Doc. 13, AC ¶¶3, 5, 23, 57-58.

(2011) (internal quotations and citation omitted). And "political speech must prevail against laws that would suppress it, whether by design or inadvertence." *Citizens United*, 558 U.S. at 312.

The County's definition of political speech as limited to subjects on this year's election ballot[9] has been directly rejected, and even lampooned in open court, by the United States Supreme Court.[10]

The State has a somewhat different view on this issue and at least acknowledges that political speech "extends to advocacy regarding…political policy generally,"[11] and that "election procedures can be a matter of public concern."[12] But the State contradicts itself and also says, essentially, that a person cannot contradict public officials' opinions about "what the existing law is."[13] The State claims that statements about the Felon Voting Law are "verifiable as a true or false statement of

---

[9] County Br. 47.

[10] Appellants' Br. 24-25 (citing Mark Joseph Stern, *The Sam Alito Treatment*, Slate (June 14, 2018), https://tinyurl.com/3nnh47f9 and *Minn. Voters All. v. Mansky*, 585 U.S. 1, 18-19 (2018)).

[11] State Br. 13 (quoting *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 205 (2003)); *see* Appellants' Br. 21-28.

[12] State Br. 14.

[13] State Br. 13.

current law."[14] The County also says Appellants' speech "misrepresent[s] what Minnesota law *actually says*."[15]

It is hard to believe that Appellees would make such claims. Appellees know these same Appellants challenged the Felon Voting Law in state court because it only purported to restore "the civil **right** to vote," Minn. Stat. §201.014, subd. 2a (2024) (emphasis added), while the Minnesota Constitution says, "a person who has been convicted of treason or felony, unless restored to civil **rights**," Minn. Const. art. VII, §1 (emphasis added), may not vote.

Appellees further know that the Minnesota Supreme Court declined to say who is right on the merits of this issue. *Minn. Voters All. v. Hunt*, 10 N.W.3d 163 (Minn. 2024) (deciding the case on standing). "Current law," as Appellees phrase it, implicates both statute—the existence of which Appellants have *never* denied—and the constitution. The constitution is supreme over statute. The *constitution* "*actually says*" that felons can't vote unless restored to civil rights, plural. Restoring just the "civil right to vote" does not accomplish that. In Appellants' view, *Appellees' speech* is false.

---

[14] State Br. 14.

[15] County Br. 43 (emphasis original).

Minnesota is simply trying to force Appellants to say, "felons *should not be able to* vote under the constitution."[16] That presumes felons *can* vote under the constitution. Appellants don't believe that. Minnesota can't force Appellants to parrot its incorrect interpretation on a matter of public concern.[17] It is core political speech protected by the First Amendment.

### III. The Speech Code Squarely Targets Appellants' Speech, and the Counterclaim Is Conclusive Proof.

Appellants thoroughly explained the threat posed to their speech by the Speech Code in their principal brief.[18] The counterclaim is conclusive proof of this threat.

The State argues that the Speech Code doesn't reach MVA's speech.[19] The County can't make up its mind, arguing on one hand that the Amended Complaint doesn't allege speech that falls within the statute's ambit,[20] but then that "MVA's Amended Complaint certainly gave County Attorney Johnson reason to suspect that MVA might have violated the statute."[21]

---

[16] State Br. 13-14; County Br. 11.

[17] The same is true when speaking about wards of the state currently being allowed to vote illegally, or if a law were passed purporting to allow 16-year-olds to vote.

[18] Appellants' Br. 13-16.

[19] State Br. 10-11.

[20] County Br. 18-21.

[21] County Br. 22.

MVA's speech can't be both outside the scope of the Speech Code but also actionable under it. If "MVA has not alleged *any* speech that falls within the statute's restrictions," how could "County Attorney Johnson *reasonably believe*[] that a counterclaim was necessary to ensure that the 2023 election proceeded without interference"?[22] The Speech Code's intent requirement simply fails to narrowly tailor the law, as this Court explained in *281 CARE Committee*: "the real potential damage is done at the time a complaint is filed." 766 F.3d at 792. The County did exactly what this Court feared: "there is nothing to prohibit the filing of a complaint against speech that may later be found wholly protected." *Id*. at 792.[23]

Appellants wish their speech was not touched by the Speech Code. But it is, as the counterclaim proves. The Speech Code targets Appellants' protected speech.

## IV. The Speech Code Perpetuates Fraud, and It Is Absurd to Call Appellants' Speech a Threat.

Appellants already explained how *the Speech Code* perpetuates fraud,[24] and that calling their speech a "true threat" makes mockery of the term.[25] Yet Appellees argue that if the Speech Code does reach Appellants' speech, then their speech is not

---

[22] County Br. 21-22 (emphasis added); *see* App. 66; R.Doc.16; Am. Counterclaim ¶44 (claiming Appellants' Amended Complaint "show[s] that they are committing and intend to commit in the future an act prohibited by the statute.").

[23] For the full quoted passage, *see* Appellants' Br. 51-52.

[24] Appellants' Br. 42-43, 51-52.

[25] Appellants' Br. 40-43, 48-50.

protected by the First Amendment.[26] Appellants' speech is core political speech,[27] and calling it a threat or fraud is an affront to the First Amendment.[28]

To start, as Appellants previously explained,[29] Appellees' mischaracterize political speech as "fraudulent" because political opponents claim it to be false. This Court soundly rejected this tired refrain a decade ago in *281 CARE Committee*. The Speech Code is the fraud-creator, not Appellants.

Calling Appellants' speech a "true threat" to anyone is utterly preposterous. "A true threat is a statement that a reasonable recipient would have interpreted as a serious expression of an intent to harm or cause injury to another." *Brandy v. City of St. Louis*, 75 F.4th 908, 915 (8th Cir. 2023) (internal quotes omitted); *see also Counterman v. Colorado*, 600 U.S. 66, 69 (2023) ("The State must show that the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening *violence*." (emphasis added)). Appellants expressly alleged,

---

[26] State Br. 12; County Br. 24.

[27] Appellants' Br. 21-28; *supra* Part II.

[28] The County makes a footnote argument that Appellants waived argument that their speech enjoys First Amendment protection. County Br. 25, n.3. This is false, as the record below shows. App. 167-170; R.Doc. 32; Pls.' Opp. 13-16 ("III. Plaintiffs' speech is quintessential political speech."); App. 189-90; R.Doc. 32; Pls.' Opp. 35-36 (Appellants' speech not a true threat); App. 193-96; R.Doc. 32; Pls.' Opp. 39-42 (Appellants' speech not false nor fraudulent).

[29] Appellants' Br. 51-52.

and verified, that they have not and will not make speech to any person that could be reasonably construed as a threat.[30]

Yet under the Speech Code, anyone can sue over speech that "would cause a reasonable person to feel intimidated." Minn. Stat. § 211B.075, subd. 1(b). Intimidation, without more, is not enough. "[T]he First Amendment prohibits Congress from punishing political speech intended to harass or intimidate in the broad senses of those words." *United States v. Sryniawski*, 48 F.4th 583, 587 (8th Cir. 2022). Intimidation can only be "constitutionally proscrib[ed]...where the speaker intends to place the victim 'in fear of bodily harm or death.'" *Id.* (quoting *Virginia v. Black*, 583 U.S. 343, 360 (2003)).[31] Saying that Appellants' speech goes there is absurd.

Further, "all six Justices in *Alvarez* agreed that false statements do not represent a category of speech altogether exempt from First Amendment protection." *281 CARE Committee*, 766 F.3d at 783; *see Alvarez*, 567 U.S. at 734-37 (Breyer, J., concurring in the judgment); *id.* at 749-51 (Alito, J., dissenting)). Even if Appellants' speech were false (it isn't), their good-faith belief in their speech's truth entitles it to protection. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 271-72 (1964)

---

[30] App. 17-20; R.Doc. 13; AC ¶¶57-73.

[31] This Court thus rejects the deeply flawed *Nat'l Coal. on Black Civic Participation v. Wohl*, 661 F.Supp.3d 78 (S.D.N.Y. 2023). Appellants' speech comes nowhere close to even "subtext[ually]" hinting at violence, so it's not a true threat. *Contra* County Br. 36.

("[E]rroneous statement is inevitable in free debate, and…it must be protected if the freedoms of expression are to have the 'breathing space' that they 'need…to survive….'" (internal quotation omitted)).[32] Even in *Mackey*, the district court acknowledged that Mackey's "false utterances" were protected speech—"subject to an intermediate scrutiny analysis." *United States v. Mackey*, 652 F.Supp.3d 309, 344 (E.D.N.Y. 2023).

Finally, Appellants already explained why the vicarious liability provision is unconstitutional.[33] It is bizarre that Minnesota wants to punish not just a putative defendant's speech, but also a third party who might have spoken to the defendant. This strange game of liability-by-telephone subjects even broader speech to criminal liability that the State disfavors. Because the Speech Code *does* target protected speech, the arguments to the contrary fall flat.[34]

## V.   The Speech Code Is Overbroad.

A law is overbroad where it sweeps a large swath of protected speech into its ambit in relation to its legitimate sweep. *Moody*, 603 U.S. at 725-26. In such a challenge, the Court "explore[s] the laws' full range of applications—the constitutionally

---

[32] This is especially true in this case, when individuals would need to speak with perfect accuracy on the legal and constitutional backdrop to avoid any accidental falsehoods. *See* Appellants' Br. 26-27.

[33] Appellants' Br. 28-29.

[34] State Br. 38-40.

impermissible and permissible both—and compare[s] the two sets." *Id.* at 726. Appellees rely on *Havlak v. Vill. of Twin Oaks*, 864 F.3d 905, 912 (8th Cir. 2017), but too narrowly interpret the mantra that a plaintiff cannot "fail[] to adduce any evidence that third parties will be affected in any manner differently from herself."[35]

Appellants *have* provided that evidence throughout this case, similar to the prevailing plaintiffs in *281 CARE Committee*.[36] Appellants argued in their principal brief and below that while true threats could be proscribed by a more narrowly drawn statute (subject to the analysis in *R.A.V.*, discussed *infra*), the Speech Code sweeps in Appellants' speech on matters of public concern.[37] Appellants further argued that the Speech Code reaches far beyond targeting lies about the nuts-and-bolts of election-day activities, like the "where" and "when,"[38] and pull in speech about matters of public concern related to voter eligibility *of all sorts*.[39] Appellants have provided examples of hypothetical speech on voter-eligibility issues beyond the speech

---

[35] County Br. 15.

[36] Appellants' Br. 32 (citing plaintiffs' affidavits in *281 CARE Committee*). Appellees also focus on the pleadings, *see* County Br. 14-17; State Br. 7-10, but Appellants expressly pleaded that the Speech Code is facially overbroad, App. 7, 24-26; R.Doc. 13; AC ¶¶22, 98-106, 110.

[37] Appellants' Br. 39-40.

[38] Appellants' Br. 42-43.

[39] Appellants' Br. 43-44; *see* App. 7, 20; R.Doc. 13; AC ¶¶23, 77; App. 289; R.Doc. 46; Pls.' Reply 9; Tr. 38-39.

implicated by the counterclaim regarding the felon-voting law, such as speech about wards of the state voting[40] and speech about 16-year-olds voting.[41]

In short, Appellants heeded the *Moody* Court's directive by comparing (without conceding) the arguably legitimate sweep of the Speech Code with its criminalization of speech on matters of public concern. The Speech Code sweeps in speech opposing illegal voting and fails to address speech encouraging illegal voting. The Court should strike down the Speech Code on its face.

## VI.  The Speech Code Is Unconstitutionally Vague.

Vagueness is closely related to overbreadth in that the vagueness of a law can cause protected speech to be swept into prosecutorial crosshairs. *Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983). With vague statutes, like with overbreadth, "the hazard of loss or substantial impairment of those precious rights may be critical," "since those covered by the statute are bound to limit their behavior to that which is unquestionably safe." *Keyishian v. Bd. of Regents*, 385 U.S. 589, 609 (1967) (internal citations omitted).

---

[40] App. 21; R.Doc. 13; Compl. ¶77; Appellants' Br. 30-31 & n.75.

[41] Appellants' Br. 11-12, 27, 31, n.76; Tr. 38-39.

Appellants argued below and in their principal brief that the Speech Code is vague in each subdivision because important terms are left undefined.[42] Speakers like Appellants are thereby subject to speech-killing litigation like the counterclaim here—or from any random Minnesotan falsely claiming that Appellants' speech somehow stopped them from voting.

Appellees try to save the Speech Code by misstating vagueness law, claiming that a law cannot be struck as vague unless it is "impermissibly vague 'in all applications.'"[43] This only applies where there is "no constitutionally protected conduct" at issue. *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 495 (1982). In *Reno v. ACLU*, the Supreme Court rejected this where First Amendment interests are in play, striking the Communications Decency Act because while it had some legitimate application—"to deny minors access to potentially harmful speech"—it "effectively suppresses a large amount of speech that adults have a constitutional right to receive and to address to one another." 521 U.S. at 874.

---

[42] Appellants' Br. 46-50. The State's argument that Appellants waived their discriminatory-enforcement argument is borderline frivolous. Appellants have argued that at every step of this case. *See, e.g.*, Appellants' Br. 47 (quoting *Reno v. ACLU*, 521 U.S. 844, 871-72 (1997)); App. 316; R.Doc. 46; Pls.' Reply 36.

[43] State Br. 24.

The State then engages in circular reasoning by claiming the intent requirement eliminates vagueness in the Speech Code.[44] Intent to do what? Notice of specific underlying conduct that violates the law is necessary to ensure constitutionality. That is absent here. It is no surprise that the State's only citation is to the vacated *United States v. Lee*, 935 F.2d 952, 956 (8th Cir. 1991), *vacated*, 6 F.3d 1297 (8th Cir. 1993) (en banc). And *Lee I* was premised on *Screws v. United States*, 325 U.S. 91, 102 (1945), which actually said: "The requirement that the act must be willful or purposeful may not render certain, for all purposes, a statutory definition of the crime which is in some respects uncertain." *Id. Intent* elements do not render the *substance* of a law definite.

Further, even if intent requirements did the heavy lift the State wishes they did, Subdivision 1 contains no intent requirement. *See* Minn. Stat. §211B.075, subd. 1(b) ("The plaintiff does not need to show that the defendant intended to cause the victim to feel intimidated."). And the remaining subdivisions plainly apply to speech that is not threatening in any manner and protected. Outside of the true-threat context, the Supreme Court has not accepted the simple application of a *mens rea* element to save broad, vague statutes. *See, e.g., Alvarez*, 567 U.S. at 736-37 (Breyer, J., concurring in the judgment) (explaining that in broad statutes, "there remains a risk of

---

[44] State Br. 24.

16

chilling that is not completely eliminated by mens rea requirements"); *281 CARE Committee*, 766 F.3d at 790 (mens rea does not reduce chilling effect).

Resort to common dictionaries does not save the Speech Code either.[45] Rather, the State's dictionary definitions show that the Speech Code is not capable of reasonable construction. For example, the State defines "impede" as "retard by obstructing; [to] hinder."[46] But "hinder" is not a high standard—it simply means "to limit the ability of someone to do something, or to limit the development of something,"[47] or "to make slow or difficult the progress of."[48] So any act which merely delays a person's voting or aiding another person in voting violates Subdivision 3. The temporary slowdown of someone's voting experience is not cognizable harm. There is no compelling government interest in prohibiting it. *Cf. Fair Fight Inc. v. True the Vote,* 710 F. Supp. 3d 1237, 1291 (N.D. Ga. 2024) (delays which "prolonged [the] voting experience" were not reasonably intimidation).

---

[45] State Br. 27-28.

[46] State Br. 28.

[47] "Hinder," Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/hinder (accessed Feb. 24, 2025).

[48] "Hinder," Merriam-Webster, https://www.merriam-webster.com/dictionary/hinder (accessed Feb. 24, 2025).

Similarly, the State defines "interfere" as to "meddle[ or] obstruct a process."[49] The inclusion of the word "meddle" fails to clarify what activities may violate the Speech Code. Is simply "busy[ing] oneself unduly with others' concerns" enough?[50] Defining broad terms within the Speech Code with more broad terms demonstrates that the Speech Code is "so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008).

The State also argues that frivolous or abusive litigation are of no concern because "[t]he Supreme Court has repeatedly allowed causes of action…to stand notwithstanding that the party bringing a claim may ultimately be unsuccessful in showing that the challenged speech is actionable."[51] Not where First Amendment considerations are in play. *281 CARE Committee* refutes the State: "the real potential damage is done at the time a complaint is filed." 766 F.3d at 792. The Supreme Court has even refused to recognize causes of actions where the risk to speech from frivolous claims is significant. *See, e.g.*, *Egbert v. Boule*, 596 U.S. 482, 499 (2022) ("Extending *Bivens* to alleged First Amendment violations would pose an acute risk of increasing such costs. A plaintiff can turn practically any adverse action into grounds

---

[49] State Br. 28.

[50] Oxford American Dictionary of Current English 492 (1999) (defining meddle).

[51] State Br. 29.

for a retaliation claim."); *Nieves v. Bartlett*, 587 U.S. 391, 403 (2019); *Bd. of Cty. Comm'rs v. Umbehr*, 518 U.S. 668, 678 (1996).

Appellants have shown that the Speech Code fails to define its terms and allows putative litigants to bring lawsuits that should never exist to punish protected speech. The Speech Code is impermissibly vague and must be eliminated.

## VII. The Speech Code Unconstitutionally Discriminates on Both Viewpoint and Content.

Subdivisions 1(a)(2), 2 and 3 are content- and viewpoint-based restrictions on speech, as Appellants argued before.[52] Again, viewpoint discrimination is "an egregious form of content discrimination" and "presumptively unconstitutional," on its face. *Rosenberger*, 515 U.S. at 829-30. Indeed, "[t]he Court's finding of viewpoint bias end[s] the matter." *Iancu*, 588 U.S. at 399.

Likewise, "[c]ontent-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Content-based restrictions create a real "danger of censorship." *Id.* at 167; *see id.* at 163 (strict scrutiny applies).

The Speech Code is censorship. It must go.

---

[52] Appellants' Br. 32-36.

**A. The Speech Code is subject to strict scrutiny, not intermediate scrutiny, because it targets Appellants' messages, not the manner of their speech.**

As a preliminary matter, the County waived any response regarding Subdivision 3. Also, the State waived any argument on appeal that subdivisions 2 and 3 are content-neutral. Notably, the State's only argument in defense of Subdivision 3 is that it is a *permissible* content regulation. For that to be true, the regulation must be "facially neutral," *United States v. Albertini*, 472 U.S. 675, 688 (1985), which the State has declined to argue.

The County's argument about subdivision 2 is based on a misunderstanding of the important distinction between regulations on the "manner" in which speech is conveyed, as opposed to regulations, like the Speech Code, targeting certain "messages." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 393-94 (1992).

As the Court explained in *R.A.V.*, the State *may* proscribe certain categories of speech—like fighting words—and it *may* even single out "fighting words that communicate ideas in a threatening (as opposed to a merely obnoxious) manner," but it *may not* "impose special prohibitions" on certain fighting words that "express views on disfavored subjects." *Id.* at 391, 393-94. This is because states can craft laws to "filter[] out *conduct*," *United States v. Dinwiddle*, 76 F.3d 913, 923 (8th Cir. 1996) (emphasis added), but not disfavored *speech*. *See also Animal Legal Def. Fund v. Reynolds*, 89 F.4th 1065, 1067-68 (8th Cir. 2024) ("*Reynolds II*") (a State may

proscribe "false speech used to commit a *trespass*" only when uttered with intent to harm an agricultural facility so it can "filter[] out [certain] *trespassers*" (emphasis added)).

The Speech Code, on the other hand, discriminates based on message, not manner. Unlike in *Reynolds II*, where trespassers fell within the ambit of the statute whether they "deceptively prais[ed] or…criticiz[ed] the facility," *id*. at 1070, the Speech Code proscribes certain words "of whatever manner" based only on the *message* conveyed, *R.A.V.*, 505 U.S. at 394. Under the Speech Code, the passing statement "felons *can't* vote" is a problem, even if made in a social setting, while shouting "16-year-olds *can* vote" near the polling place is permissible. In other words, the Speech Code does not "filter out" innocuous trespassers or members of an ineffective picket line; it targets all speech of a certain viewpoint, no matter the context.[53] And "[t]he Court's finding of viewpoint bias end[s] the matter." *Iancu*, 588 U.S. at 399.

Appellees also attempt to bypass *R.A.V.* and *Reed* by claiming that Appellants' speech is "materially false" under *Alvarez*.[54] They apply an interpretation of *Alvarez* foreign to this circuit. This Court plainly held that the only "binding aspect of the decision" is the "specific result" that the Stolen Valor Act was unconstitutional. *Animal Legal Def. Fund v. Reynolds*, 8 F.4th 781, 785 (8th Cir. 2021) ("*Reynolds I*").

---

[53] *See* Appellants' Br. 32-33 (citing *Reed*, 576 U.S. at 163).

[54] County Br. 36-39; State Br. 36.

Immediately after *Alvarez*, this Court also held that Justice Breyer applied intermediate scrutiny because "the regulation at issue in *Alvarez* concerned false statements about easily verifiable facts that did not concern subjects often warranting greater protection under the First Amendment." *281 CARE Comm.*, 766 F.3d at 784. The Speech Code, like section 211B.06 in *281 CARE Committee*, is different: Appellants have, and want to continue, making *true* statements about speech on quintessential—and complicated—matters of public concern. Because Appellants' speech *is* political speech, *see supra* Part II, "strict scrutiny" applies, even after *Alvarez*. *Id.* And, to the extent Appellants' speech could be considered false (it isn't), it cannot be "easily verified" as such. Indeed, the County claims it "needs discovery to determine whether Section 211B.075 has been violated."[55]

## B. No compelling interest justifies the Speech Code, and it is not actually necessary to solve any problem.

Under either strict or intermediate scrutiny, subdivision 2 fails.[56] To start, Appellees fail to show that the Speech Code serves a compelling interest *and* is "actually necessary" to solve an "actual problem." *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 799 (2011).

---

[55] County Br. 13.

[56] Appellants' Br. 50-55.

There is no free-ranging "compelling interest in protecting voters from confu-sion"[57] during the entire election process; rather, "[d]irectly regulating what is said or distributed during an election…goes beyond an attempt to control the process to en-hance the fairness overall so as to carefully protect the right to vote." *281 CARE Comm.*, 766 F.3d at 787. The interest the State references relates instead to preventing voter confusion (1) on the ballot, *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364 (1997), or (2) near the polling place, *Burson v. Freeman*, 504 U.S. 191, 206 (1992). The Speech Code regulates speech throughout an election season, and there is no polling-place limitation on it. Thus, it does not address a compelling interest.

But even if there were such an interest here, Appellees cannot demonstrate an ac-tual voter-confusion problem in Minnesota or, more importantly, that the Speech Code would help solve it. Appellees' only "evidence"[58] are unsupported statements about the general rise of so-called "disinformation"[59] and citations to cases involving *other* laws. *See, e.g.*, *Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F.Supp.3d 457,

---

[57] State Br. 15.

[58] The County's argument that no evidence is required, County Br. 59-60, is fore-closed in this circuit. Appellants' Br. 54. The County's citations either say just that, *e.g.*, *OPAWL v. Yost*, 118 F.4th 770, 782 (6th Cir. 2024) (no evidence only when "obvious"), or are only applicable to different kinds of restrictions, *e.g.*, *Frank v. Lee*, 84 F.4th 1119, 1139 (10th Cir. 2023) (modified evidentiary burden for polling-place buffer-zones).

[59] State Br. 3.

465-66 (S.D.N.Y. 2020) (false and threatening robocall proscribed by federal law). Appellees identify no problematic speech that was not already being addressed by the Voting Rights Act or Minnesota's other election-speech laws like Minn. Stat. §204C.035. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 349-51 (1995) (interest served by an *additional* "aid to enforcement" insufficient to justify an "extremely broad prohibition"). Appellees claim Minnesotans *need* the Speech Code "without confirming that there is an actual, serious threat" without it. *281 CARE Comm.*, 766 F.3d at 787.

The most effective, available alternative is counterspeech. The State claims counterspeech would come too little, too late "if [voters] only hear it after election day."[60] But, related to something said to someone on election day, the Speech Code's "protections" are also too late. As the State acknowledged at the hearing below, if an individual is "200 yards from the polling place and they tell somebody, You are a felon, You can't vote," the proper response is not to go file a lawsuit under the Speech Code.[61] Instead, the *only* remedy is to "ignore them and go in and vote."[62] There, counterspeech is a readily available alternative that helps the voter to do so.[63]

---

[60] State Br. 18.

[61] Tr. 18:7-10.

[62] Tr. 18:12-13.

[63] *See* Appellants' Br. 9 (government speech on felon voting).

Likewise, related to something said to someone 60 days before election day, there is plenty of time to call Anoka County or the Secretary of State to get their take on the law. The State's counterspeech is the superior remedy for speech the State considers false.

### C. The Speech Code lacks meaningful limiting features, so the law is not narrowly or adequately tailored to any state interest.

Neither the Speech Code's catch-all intent requirement nor its knowledge requirement narrow its prohibitions to situations where "the act of voting itself" is actually at risk.[64] The Speech Code lacks needed "limiting features"—"limitations of context, requirement of proof of injury, and the like"—to "narrow the statute to a subset of lies where specific harm is more likely to occur." *Alvarez*, 567 U.S. at 734, 736 (Breyer, J., concurring).

First, while the private right of action allows a "person injured by" Appellants' speech—somehow—to bring a civil action, Minn. Stat. §211B.075, subd. 5(b), (c), it does not define what "injured" by speech means. Is simply hearing it enough? Moreover, a private action can be brought "[i]f there is a reasonable basis to believe that an individual or entity is committing or intends to commit a prohibited act." This deputizes anyone to prosecute speech that is and is later proven harmless—before any supposed harm is done, because no words have even been uttered.

---

[64] County Br. 56.

Even worse, Appellees may bring a civil action even if *no one* is injured by the speech in question. *Id.* subd. 5(b). The counterclaim is proof. Submitting individuals to lengthy and costly discovery long *after* speech has been uttered is not "actually necessary" to *prevent* election misinformation. This litigation tactic only serves to chill speech which, after discovery, may be vindicated as true. *See 281 CARE Comm.*, 766 F.3d at 793.

The County ignores the lack of injury requirement, focusing instead on Subdivision 2's application to speech that is "materially false." That phrase is only in subdivision 2. And while materiality might matter in the false-statement-for-hire context, *Reynolds I*, 8 F.4th at 787, the lack of an *injury* requirement in the Speech Code for prosecutors necessarily untethers it from materiality. Materiality relates to the quality of "effect[ing]" a result. *Id.* But the Speech Code's lone "materiality" provision has no relationship to an injury-in-fact.[65] And the type of "injury" sought to be remedied in court by another random Minnesotan is that vague "imped[ing]" of the right to vote. The First Amendment prohibits such broad, rudderless enforcement.

It's also irrelevant that state courts, rather than administrative ones, would sort this mess out. The statute in *281 CARE Committee*, just like the Speech Code, permitted "*anyone*" to bring a claim, even though private actors are unconstrained by "explicit

---

[65] Appellants' Br. 43.

guidelines or ethical obligations." 766 F.3d at 790 (quoting *SBA List*, 573 U.S. at 164). This was less criticism of administrative courts than recognition that private parties file "tactically calculated" complaints to go after "easy targets" like Appellants. *Id.* State courts' ability to "sanction spurious litigants who bring meritless claims,"[66] fails to comfort speakers like Appellants who must "lawyer-up" to defend their speech. *See supra* Part III. The *mens rea* requirement also fails to help. *See supra* Part VI.

### VIII. The Speech Code Is an Unconstitutional Prior Restraint.

Appellees appear to argue that prior restraints don't really exist if there's *any* court process.[67] There's superficial plausibility in this oversimplification if one only glances at *Alexander v. United States*. But *Alexander* distinguished RICO from the Texas statute struck down in *Vance v. Universal Amusement Co.*, 445 U.S. 308 (1980), that authorized "*courts…to issue* an injunction of indefinite duration prohibiting the future exhibition of films that have not yet been found to be obscene." *Alexander*, 509 U.S. at 550 (emphasis added); *accord New York Times Co. v. United States*, 403 U.S. 713 (1971); *id.* at 720 (Douglas, J., concurring) (Government sought to enjoin publication of the Pentagon Papers under federal statute).

---

[66] State Br. 17.

[67] County Br. 61-62 (Subdivision 5 "merely creates a cause of action through which a party might request a prior restraint from a court"); State Br. 19 (prior-restraint doctrine is narrow and applies to orders and informal procedures suppressing future speech).

The prior-restraint doctrine does not fall away just because a statute allows injunction post-adjudication. A procedural framework that chills speech is no less unconstitutional simply because it is framed as procedure rather than substance.

*Emineth v. Jaeger*, 901 F.Supp.2d 1138 (D.N.D. 2012), is instructive. That court considered an electioneering ban "outlaw[ing] speech about candidates, parties, and ballot measures on any election day." *Id.* at 1143. The court explained: "[r]ather than punishing speech that interferes with the fair and orderly administration of elections where such speech takes place, the law was issued in advance of the time the forbidden communications are to occur." *Id.* Thus, "[t]he electioneering ban broadly prohibits speech both on its face and by inducing excessive caution on the part of the speaker." *Id.* Like the Speech Code, that's an unreasonable prior restraint and content-based restriction on speech. *Id.* at 1146-47.

Furthermore, there is *already* a counterclaim against Appellants' speech, plus a threat of additional proceedings if Appellants continue speaking.[68] Like the receipt of a "cease and desist request…is an impermissible prior restraint on protected expression," so is the County's threat to enjoin Appellants' speech in court. *Weaver v. Bonner*, 309 F.3d 1312, 1323 (11th Cir. 2002).

The County relies on *Hershey v. Jasinski*, 86 F.4th 1224, 1234 (8th Cir. 2023),

---

[68] Appellants' Br. 15-16.

for the premise that "an almost immediate judicial determination of the validity of the restraint" can 'constitutionalize' a prior restraints. But subdivision 5 isn't that— there is no right to an immediate hearing, and over a year later, the counterclaim here remains. Moreover, *Hershey* is inapposite because that law merely required prior notice and did "not allow an administrator to deny permission" to speak. *Id.*

The County's reliance on *Backpage.com, LLC v. Dart*, 807 F.3d 229, 238 (7th Cir. 2015) also lacks context because it focuses on the passage discussing the *remedies* available to Backpage—an issue the Seventh Circuit did not reach until determining that the "threaten[ed] penalties for future speech goes by the name of prior restraint." *Id.* at 235 (internal quotes omitted). The Seventh Circuit did not suggest the sheriff should have filed a lawsuit instead of making threats; it stated that the threats were a prior restraint and the plaintiffs could get an injunction against those threats.

No process can cure the Speech Code's unconstitutionality because its procedures explicitly *enjoin speech* within 60 days of an *election*—the point at which speech on matters of public concern is most vital. Even a temporary error within 60 days of an election risks irreparable injury that the Speech Code fails to guard against.

# CONCLUSION

Appellants respectfully request that the Court reverse and remand for further proceedings consistent with Appellants' request in the principal brief.


Respectfully submitted,

**UPPER MIDWEST LAW CENTER**

Dated:  February 24, 2025

*/s/ James V. F. Dickey*

Douglas P. Seaton (#127759)
James V. F. Dickey (#393613)
Alexandra K. Howell (#504850)
12600 Whitewater Drive, Suite 140
Minnetonka, MN 55343
james.dickey@umlc.org
(612) 428-7000

**LIBERTY JUSTICE CENTER**

Reilly Stephens*
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735
(512) 481-4400
rstephens@ljc.org
*Admission to be sought*

*Attorneys for Appellants*

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,454 words.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Version 2502 in Times New Roman font, 14-point.

3.  The brief and addendum have been scanned for viruses and are virus free.

**UPPER MIDWEST LAW CENTER**

Dated: February 24, 2025     */s/ James V. F. Dickey*

Douglas P. Seaton (#127759)
James V. F. Dickey (#393613)
Alexandra K. Howell (#504850)
12600 Whitewater Drive, Suite 140
Minnetonka, MN 55343
james.dickey@umlc.org
(612) 428-7000

**LIBERTY JUSTICE CENTER**

Reilly Stephens*
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735
(512) 481-4400
rstephens@ljc.org
*Admission to be sought*

*Attorneys for Appellants*

## CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 25, I hereby certify that I electronically filed this brief with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system on February 24, 2025. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

**UPPER MIDWEST LAW CENTER**

Dated: February 24, 2025

*/s/ James V. F. Dickey*
Douglas P. Seaton (#127759)
James V. F. Dickey (#393613)
Alexandra K. Howell (#504850)
12600 Whitewater Drive, Suite 140
Minnetonka, MN 55343
james.dickey@umlc.org
(612) 428-7000

**LIBERTY JUSTICE CENTER**

Reilly Stephens*
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735
(512) 481-4400
rstephens@ljc.org
*Admission to be sought*

*Attorneys for Appellants*